Worth Huskey Coal Company, Defendant in Error, v. The Parker-Washington Company, Plaintiff in Error.

## Gen. No. 15,243.

1. CONTRACTS—*right to reject deliveries of coal.* Coal delivered which is not the kind and quality contracted to be delivered is properly rejected.

2. ACCORD AND SATISFACTION—*when not established.* "Where the amount due a creditor is ascertained and not in dispute, the payment by the debtor and acceptance by the creditor of a less sum will not operate as a satisfaction of the demand; but if the amount due is unliquidated and there is a *bona fide* dispute as to how much is due,

a payment of the amount claimed by the debtor to be due, in full settlement, if accepted by the creditor is a satisfaction of the claim."

Error to the Municipal Court of Chicago; the Hon. J. C. SCOVEL, Judge, presiding. Heard in this court at the March term, 1909. Reversed. Opinion filed October 6, 1910.

**Statement by the Court.**    This writ of error is sued out to reverse a judgment for $401.65 against the defendant, plaintiff in error here. The cause was tried without a jury.

The defendant company doing business as a contractor and excavating a tunnel for the city of Chicago was in May, 1908, consuming from one to two carloads of coal a day. The plaintiff is a dealer in coal and had been delivering to defendant coal known as "Knox County Indiana, Mine Run Coal." On the 16th of May, 1908, the defendant by its superintendent gave the plaintiff an order as follows: "You may enter our order for ten cars Mine Run Coal same quality as you have been delivering to us, one car per day—or not less than one car every two days, f. o. b. Grand Crossing, Ills., Ill. Central, Lake Shore or Ft. Wayne tracks, at one dollar seventy cents per ton. You may extend shipments on the above terms beyond the amount and time specified until notified by us to cease shipment." This order is said to have been accepted, but within three or four days the secretary of the plaintiff called at the defendant's office and stated that owing to a strike in Indiana plaintiff could not furnish any Indiana coal except a car or two then in transit, until coal mining in Indiana should be resumed, but would fill the order with other coal of quality equal to Knox County Mine Run coal. There is some difference between the witnesses as to the exact phraseolgy used in this conversation, whether the plaintiff's secretary promised coal of equal quality or "a very good grade of Illinois coal" through the strike period. Plaintiff thereupon directed twelve or more cars of Illinois coal to be shipped to the defendant, and in all ten cars of Illinois coal were so shipped, received and paid for by defendant. Five carloads of the same kind of coal however arrived between June 8th and June 12, 1908, and were set on the tracks for

defendant by the Ill. Central Ry. Co., but were refused and were never accepted or used by the defendant. Three of these carloads were subsequently used by the railroad company and two carloads were sold by the latter company for its charges. These are the cars now in controversy.

There is testimony tending to show that early in June, 1908, defendant notified plaintiff that the coal was coming too fast for defendant to take care of it, and during the first week of June there was a conversation at defendant's office between plaintiff's secretary and defendant's representatives, in which the latter complained that the Illinois coal shipped to them was not satisfactory, not in accordance with the agreement, and plaintiff was notified that defendant would not receive any more of that coal. There is testimony also tending to show that on or about the 8th or 10th of June the plaintiff's secretary was again notified that defendant would not receive the coal on the tracks and that it had notified the Illinois Central Railroad Company of such refusal. There is conflict in the testimony as to what was said at these conversations.

FRANK L. CHILDS and ODE L. RANKIN, for plaintiff in error.

HARVEY STRICKLER, for defendant in error.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of the defendant that the latter gave plaintiff timely notice that it would not receive the five cars of coal in question, that defendant had the right to refuse it, that the Illinois coal furnished was of inferior quality, that the court erred in rejecting proof of the relative qualities of the Indiana and Illinois coal in question and that the use of defendant's check by plaintiff while there was a *bona fide* dispute over the item of demurrage which had been deducted from the voucher accompanying the check, was an accord and satisfaction of the demurrage item and all mat-

ters contained in said voucher. As to the first of these contentions we are of opinion the preponderating evidence tends to show that notice of the defendant's refusal to accept the five carloads in question was given to the railroad company early in June with a request that the shippers be notified, and that the plaintiff's secretary was in fact so notified by defendant, in apt time. There is correspondence between the parties that tends to sustain this view in addition to the other evidence.

In the next place, it appears the original understanding was that Illinois coal of good quality was to be furnished by plaintiff to defendant until coal mining in Indiana should be resumed. It is conceded that mining in Indiana was resumed about June 1st and that plaintiff received Knox County Indiana coal on June 4th, the kind it had been shipping defendant prior to the strike, and this was before the five cars of Illinois coal in controversy which defendant refused to receive were placed on the tracks by the Illinois Central Railroad Company for delivery to defendant. It is apparent that in shipping this coal the plaintiff was not conforming to the terms of the original understanding and agreement. That the Illinois coal so shipped was of inferior quality and that defendant had been complaining about it, the evidence sufficiently discloses.

It appears that on or about August 1, 1908, defendant made out a statement or voucher showing the numbers of the cars received from plaintiff which were received and used by defendant, the freight charges and demurrage on each car, the invoice price and showing a balance due from defendant of $496.88 after deducting the demurrage paid. A check for this balance was made out and sent to plaintiff with the voucher, which contained a receipt for the amount of the check, "Four Hundred Ninety Six and $88/100$ dollars in full settlement of the above account." There was a dispute between the parties as to the demurrage charged amounting to $95, which had been deducted by defendant, the check being for the balance after such deduction had been made. Plaintiff retained this check and voucher and upon August 14,

1908, plaintiff's secretary wrote to defendant that he had not heard from defendant in regard "to the car service which you promised to investigate and let us know about. You will remember this amount was $95 and was deducted from your voucher. We have been holding the check pending investigation and would now like to know what you intend doing in the matter, as this delay ties up our money." About the first of September following there was a conversation about this demurrage between representatives of the respective parties at the defendant's office. At a subsequent conversation over the telephone defendant's representative offered to "pay a portion of the demurrage on condition that our past accounts were all closed up;" and this was followed by a letter, a por· tion of which is as follows, dated September 17, 1908:

"Worth Huskey & Co.,
    303 Dearborn St., City.
    Gentlemen: We wish to say in regard to our conversation over the telephone this afternoon, we are well satisfied that justly you should pay the car service as per deductions made from your invoices, but we feel this way about our deals with you that rather than having this matter of claims standing between yourself and us, we are willing to compromise our differences by the payment to you of $75.00 on the $95.00 car service deductions, you giving us a receipt in full for all our transactions with you to date."

Within the next two days it appears from the evidence the check in question was deposited and collected by the plaintiff, the latter having full knowledge of the terms upon which the check was held by it and that the demurrage item was still in dispute. We are of opinion that the defendant's contention to the effect that "the use of defendant's check while there was a *bona fide* dispute over the item of demurrage which had been deducted from defendant's voucher which accompanied said check was an accord and satisfaction of the demurrage item and all matters in the voucher contained," is in view of the evidence and the law applicable well taken. In Snow v. Griesheimer, 220 Ill. 106–109, it is said: "Where the amount due a creditor is ascertained and not in dispute,

the payment by the debtor and acceptance by the creditor of a less sum will not operate as a satisfaction of the demand; but if the amount due is unliquidated and there is a *bona fide* dispute as to how much is due, a payment of the amount claimed by the debtor to be due, in full settlement, if accepted by the creditor is a satisfaction of the claim. In Ostrander v. Scott, 161 Ill. 339–345, it is held in substance that one cannot receive and use a check and repudiate the terms upon which it was tendered. See also Perkins v. Headley, 49 Missouri App. 556.

In view of the conclusions stated it is not necessary to follow counsel in the discussion of other points raised in the briefs. For reasons indicated the judgment of the Municipal Court must be reversed.

*Reversed.*