## LE DUC v. NORMAL PARK PRESBY-TERIAN CHURCH.

### No. 8438.

Circuit Court of Appeals, Seventh Circuit.

May 4, 1944.

See also Norton v. Normal Park Presbyterian Church, 318 Ill.App. 233, 47 N.E.2d 526.

Thomas H. Fisher, of Chicago, Ill., for appellant.

Benjamin Wham and Wham, O'Brien & MacLean, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff brought suit to recover (1) pension contributions which he claims should have been paid by defendant to the Board of Pensions of the Presbyterian Church; (2) salary as pastor of defendant from November 1, 1940, to December 1, 1940, at $208.67 per month; and, (3) similar compensation from December 1, 1940, to December 1, 1942, at $416.66 per month. From an adverse judgment, he prosecutes this appeal.

Whether any salary for the period from December 1, 1940, to December 1, 1942, was due depends primarily upon whether, prior thereto, plaintiff's employment as pastor of the church had been properly terminated by church authorities in accord with the legal rights of plaintiff and with the Presbyterian Constitution and governing law.

On September 17, 1928, defendant engaged plaintiff as its minister. Under the agreement, the employment was at the will of either party and the salary fixed at $5000 per year. To the pension fund administered by the Board of Pensions under the laws of the church, both plaintiff and defendant were bound to contribute, if they desired to share in its benefits. In 1933, because of the depression, the salary was reduced to $2400, and the parties mutually agreed that the privilege of contributing to and sharing in the pension fund had been abandoned. In 1936 the salary was restored to $2500 and, at that figure, paid in full to January 1, 1941. That the salary

was reduced and that no part remained unpaid on December 1, 1940, is apparent from the record and decision in Norton v. Normal Park Presbyterian Church, 318 Ill. App. 233, 47 N.E.2d 526. The only question in this respect remaining undecided, therefore, is whether prior to December 1, 1940 the relationship of pastor and congregation had been properly dissolved and the employment brought to an end.

Early in 1940 plaintiff demanded additional compensation. Some dissatisfaction had appeared among the church members and by vote of the elders and trustees the increase was refused and the Presbytery requested to investigate the status of the relationship of the pastor and his congregation. That body appointed a commission which held hearings at which plaintiff and representatives of the congregation appeared and offered evidence, resulting in a rather voluminous record which was then presented to the Presbytery. The commission found that plaintiff had asserted that he had "a good case" for past salary and the pension in the civil courts and that on November 8, 1940, one Norton, a stranger, had brought suit as assignee of plaintiff against the church to recover alleged unpaid salary and pension for the period ending November 1, 1940. The commission concluded that continuation of plaintiff as pastor would result only in lack of peace and harmony and disruption of a status essential to the welfare of the church. The commission exceeded its authority in dissolving the relationship, but the Presbytery received the report, and, after full consideration, approved the recommendations and removed plaintiff as minister on December 2, 1940.

Plaintiff appealed to the Synod, which referred the matter to its committee on judicial business. Upon the report of that committee, the Synod denied plaintiff any relief and, thereupon, he appealed to the General Assembly, the constitutional supreme body of the Presbyterian Church. It heard detailed oral statements and arguments of the parties, considered extensive briefs filed in their respective behalves and affirmed the action of the Presbytery.

The General Assembly remarked that the procedure followed was not in accord with the Constitution and laws of the church. But it observed that voluminous testimony had been collected at hearings where the parties had been represented and that in this final hearing both had requested the Assembly to determine the matter upon the merits. While not approving the procedure, the Assembly, after a full and complete review of the record, decided that the irregularity in procedure had not infringed upon the substantial rights of the parties, or limited the discretion of the Presbytery; that the matter had been before the latter body for determination upon the merits; that the question was not one of irregularity but one of power and discretion; that the Presbytery had authority to dissolve the pastoral relationship; that its discretion had been exercised and had not been abused. This power of the Presbytery, it said, grew out of Chapter 10 of Section 7 of the Form of Government of the church, which provides that the Presbytery has jurisdiction to ordain, install, remove and judge ministers, and, in general, to order whatever promotes the spiritual welfare of the churches. The Assembly found that peace and harmony within the church could not be maintained in the face of the suit which plaintiff had begun; that, though plaintiff had a right to sue in the civil courts, that fact did not lessen the significance of his action as an influential factor tending to work disturbance of peaceful and harmonious relationship between the pastor and the congregation, and constituted sufficient cause for the exercise of discretionary power by the Presbytery. Thus, it appears, the highest body of the church has determined that, under the Constitution and laws of the church, the relationship of the pastor and his congregation has been properly terminated.

█ Plaintiff asserts error in this respect upon the premise that the irregularity in procedure was such as to prevent plaintiff from enjoying a fair and impartial hearing and decision. We agree with the Assembly that the power lay in the Presbytery to dissolve the relationship; that the evidence was sufficient to justify that body in exercising its discretion in this respect, under the Constitution and By-Laws, by which both plaintiff and defendant were bound. Plaintiff was not surprised or prejudiced; he had a full, fair judicial hearing. Plaintiff protested the jurisdiction in no way in the hearings before the commission which, he says, the latter was unauthorized to conduct. He participated therein, offered his evidence, made his arguments and submitted his cause. His position was not unlike that of one who, when sued outside of his own jurisdiction, waives his

personal privilege to be sued in some other venue. Whatever the procedure, the record is clear that eventually plaintiff received a fair, judicial hearing, brought about at his own behest, on the complaint presented to the General Assembly. It is too late for him to complain now that the mechanics of procedure were not perfect.

■■ It follows that the District Court properly held plaintiff entitled to recover no salary after the date of the termination of his pastorate. Adjudications of an ecclesiastical tribunal, to which the parties are subject and have submitted their controversies arising under church laws, must be accepted by the civil courts, unless some civil right has been denied. Chase v. Cheney, 58 Ill. 509, 11 Am.Rep. 95; Fussell v. Hail, 233 Ill. 73, 84 N.E. 42; Presbyterian Church v. First Cumberland Presbyterian Church, 245 Ill. 74, 91 N.E. 761; Barton v. Fitzpatrick, 187 Ala. 273, 65 So. 390; Connitt v. Reformed, etc. Church of New Prospect, 54 N.Y. 551.

■ As to the salary for November and December, 1940, it is to be observed that plaintiff received from defendant a check for each period at the rate of $208.67 per month and that each of them bore a statement that the check was in full payment of salary for the respective months. Plaintiff accepted these checks and, without the knowledge of defendant, endorsed and cashed them, adding below his endorsement the words "on account." Obviously, when he received the checks tendered to him as full payment for each of the two months, he could accept them or refuse them and he could not accept them and then ex parte, without the knowledge of plaintiff, eradicate the essential character of the tender, that is, the offer to deliver the checks in full payment of the amounts due. He could make no modification of the terms by his endorsement. Ostrander v. Scott, 161 Ill. 339, 43 N.E. 1089. Furthermore, the parties even then were in dispute as to whether any salary was due. Then, too, the amount was in controversy. Consequently, payment of the amount claimed by the debtor to be due in full settlement, when accepted by the creditor, was a satisfaction of the claim. Worth Huskey Coal Co. v. Parker-Washington Co., 157 Ill.App. 199.

■ As to the demand for pension, we think the decision of the Appellate Court in the cause between plaintiff's assignee and defendant creates an estoppel by verdict to claim any relief. The propriety of this demand was in issue in the litigation in the state court and, rightfully or wrongfully, the Circuit Court and the Appellate Court upon appeal disposed of it against plaintiff's assignee. The Supreme Court of Illinois denied an appeal. Privity existed between plaintiff and his assignee. Towle v. Quante, 246 Ill. 568, 92 N.E. 967; consequently an effective estoppel came into existence, Leopold v. City of Chicago, 150 Ill. 568, 37 N. E. 892; Hanna v. Read, 102 Ill. 596, 40 Am.Rep. 608.

■ Furthermore the evidence discloses beyond peradventure that plaintiff and defendant abandoned the pension plan many years ago; that neither ever contributed to it and that it was agreed, by plaintiff and the officers, that neither would be bound by it.

Finding no error in the proceeding, the judgment is affirmed.