RAY F. HEIDEN, Plaintiff-Appellee, v. GALVA FOUNDRY COMPANY, Defendant-Appellant.

Third District   No. 3—91—0550

Opinion filed December 24, 1991.

Vonachen, Lawless, Trager & Slevin, of Peoria (James E. Konsky, of counsel), for appellant.

Dean B. Rhoads, of Sutkowski & Washkuhn Associates, of Peoria (Edwin L. Durham, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, Ray Heiden, sold his controlling interest in the Galva Foundry Company (the Company) to the defendant, the Galva Foundry Acquisition Corporation (Galva). The purchase price was based upon a valuation formula which utilized the presumed net book value of the Company. The formula and details of the transaction were set forth in the acquisition and merger agreement (the Agreement), which provided that disputes over the closing balance sheet

would be submitted to arbitration. Deloitte, Haskins & Sells, one of the nation's largest accounting firms, was designated to act as the parties' arbitrator. After the sale, the firm of Deloitte, Haskins & Sells merged with Touche Ross, also a large national accounting firm. When a dispute arose between the parties over the amount due under the contract, Galva filed an action for declaratory judgment in Federal district court alleging that it was entitled to certain setoffs against amounts owed to Heiden. The Federal district court dismissed for want of diversity jurisdiction. The Seventh Circuit Court of Appeals affirmed.

Heiden then brought the present breach of contract action in the circuit court of Henry County. In response, Galva filed a motion to compel arbitration and stay all judicial proceedings pending the conclusion of arbitration. Heiden argued that since the firm of Deloitte, Haskins & Sells was chosen by the parties to arbitrate their disputes, and the firm no longer existed as contemplated by the parties' agreement, he was no longer obligated to arbitrate. The trial court agreed and denied Galva's motion to compel arbitration. We reverse.

On April 22, 1988, an acquisition and merger agreement was entered into by Heiden and the present owners of the Galva Foundry Co. In order to arrive at a purchase price for Heiden's common stock, the parties agreed to use a particular valuation formula. In summarized form, the valuation formula provided that Galva's issued and outstanding common stock would be valued at $683,280 subject to certain adjustments provided in the acquisition and merger agreement. The $683,280 figure was based on the assumption that the net book value of Galva Foundry Company was $954,120 as of 12:01 a.m. April 16, 1988. The figure of $954,120 was derived from an unaudited balance sheet of the Company dated March 31, 1988. If the actual net book value of the Company as of the April 15, 1988, date exceeded $954,120, Heiden would be entitled to additional compensation for his shares (according to the formula contained in the acquisition and merger agreement), and if the actual net book value was less than $954,120, Heiden would be entitled to less compensation. In order to test the accuracy of the $954,120 assumption, the parties agreed that a closing balance sheet would be prepared after the closing which would reflect the net book value of the Company as of April 15, 1988. The closing balance sheet was prepared by Schumaker, Romenesko & Associates, Certified Public Accountants.

Upon the merger of Galva Foundry Acquisition Corporation into Galva Foundry Company, Heiden received a cash payment of $125,000 and a promissory note from Galva Foundry Company. The promissory

note was in the principal amount of $524,356.98 and provided for monthly installment payments of principal and interest. The principal amount of the original promissory note was based upon the valuation formula which utilized the presumed net book value of the Company of $954,120. Thus, each share of Heiden's common stock was assigned a value based upon the net book value of the Company being $954,120. This value is referred to in the Agreement as the provisional per share amount. The closing balance sheet prepared by Schumaker, Romenesko & Associates reflected that the actual net book value of Galva Foundry Company on April 15, 1988, was $248,654 less than the net book value of the Company as reflected on the unaudited balance sheet on March 31, 1988. As a result, the Company computed that the principal amount of the promissory note delivered to Heiden at closing should be reduced by $230,490.12.

The acquisition and merger agreement provided that the closing balance sheet "shall be prepared in accordance with generally accepted accounting principles applied on a basis consistent with past practice, and based upon a physical inventory to be conducted by representatives of Buyer and the Company as of the close of business on April 15, 1988." The Agreement further provided that the closing balance sheet would be prepared within 60 business days following the effective date and that Heiden would be provided all work papers used by the accountants in connection with the preparation of the closing balance sheet. The Agreement provided that Galva Foundry Company would then deliver to Heiden a copy of the closing balance sheet together with an officer's certificate stating that the closing balance sheet had been prepared in accordance with the Agreement. Finally, the parties provided that disagreements regarding the closing balance sheet would be resolved by arbitration. The Agreement provided that the firm of Deloitte, Haskins & Sells "shall" act as the parties' arbitrator. The acquisition and merger agreement further provided:

> "Governing Law. This Agreement shall be construed and interpreted according to the laws of the State of Wisconsin without reference to the rules of conflicts of law."

After a hearing on Galva's motion to compel arbitration, and after reviewing various documents related to these transactions, the trial court ruled that the parties agreed that Illinois law would govern their transaction. The court based its ruling on the fact that the parties' noncompetition agreement, nonnegotiable promissory note and general business security agreement all specifically recited that they "shall" be construed in accordance with the laws of the State of Illi-

nois. The court also found that the parties, by their conduct in the lawsuit, had agreed to have their agreement determined by Illinois law. The court relied on the fact that the case was pending for some period of time without either side even mentioning the Wisconsin provision. Clearly, this ruling is supported by the evidence. See *Yates v. Doctor's Associates, Inc.* (1990), 193 Ill. App. 3d 431, 438, 549 N.E.2d 1010.

A number of issues were presented to the court dealing with choice of law and questions of Federal preemption under the Federal Arbitration Act. Because of our disposition of this case, we do not need to deal further with these questions.

The trial court, after finding that Illinois law applied to the agreement to arbitrate as contained in the acquisition and merger agreement, then found that the firm of Deloitte, Haskins & Sells no longer existed as contemplated by the Illinois Uniform Arbitration Act (Act) (Ill. Rev. Stat. 1989, ch. 10, par. 101 *et seq.*). The Act provides, in pertinent part:

> "When an arbitrator appointed *fails or is unable to act,* his successor shall be appointed in the same manner as the original appointment. If the method of appointment of arbitrators is not specified in the agreement and cannot be agreed upon by the parties, the entire arbitration agreement shall terminate." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 10, par. 103.

Based upon the above-cited statute and the trial court's finding that Deloitte, Haskins & Sells no longer existed, the trial court ruled that Heiden was no longer obligated to arbitrate. The court, in so doing, relied on the fact that there was no provision for naming a successor arbitrator in the Agreement. The court's reasoning was as follows: (1) the firm of Deloitte, Haskins & Sells was selected by the parties to arbitrate their disputes; (2) Deloitte, Haskins & Sells no longer existed because it merged with the firm of Touche Ross; (3) the parties failed to name a successor or method of selecting a successor; and (4) the parties cannot agree on a successor. Although the trial court's reasoning possesses some syllogistic merit, we are of the opinion that the Illinois Uniform Arbitration Act was not intended to be interpreted in a rigid or formalistic manner.

■■ The Illinois Uniform Arbitration Act was enacted to provide for an easier, more expeditious and less expensive manner of resolving disputes than by litigation. (*Board of Trustees of Community College District 508 v. Cook County College Teachers Union Local 1600* (1981), 102 Ill. App. 3d 681, 430 N.E.2d 249.) The primary purpose of an agreement to arbitrate is to enable the parties to secure a speedy

determination of their differences without conforming to the strict formalities necessary in a court of law. *Wilhelm v. Universal Underwriters Insurance Co.* (1978), 60 Ill. App. 3d 894, 377 N.E.2d 62.

It would elevate form over substance and would be contrary to the overall purpose and goals of arbitration to hold that an agreement to arbitrate is inoperative because the national accounting firm which the parties chose merged with another national accounting firm. We decline to give this narrow interpretation to the Act. It is very clear from the record and from the responses of counsel during oral argument that this was not an agreement to arbitrate that was entered into only because a specific named individual was to be the arbitrator. Deloitte, Haskins & Sells and its successor are both large, national accounting firms. The actual person to serve as arbitrator would be assigned by the firm. Accordingly, we hold that the trial court erred when it found that the parties were not obligated to arbitrate because the firm of Deloitte, Haskins & Sells had merged and no successor was named. We further hold that the successor firm of Deloitte & Touche is the firm contemplated by the parties to serve as arbitrator in this cause.

■ The defendant-appellant, Galva Foundry Company, also alleges that the trial court erred in ruling as an additional reason to deny arbitration that the issues raised by Heiden in the State-court action must relate to the issue which is covered by the arbitration clause. In other words, the trial court denied arbitration because the motion to compel arbitration did not deal with issues which had been raised in Heiden's complaint. We agree with the Company that the trial court erred on this issue also. Sections 2(c) and (d) of the Illinois Uniform Arbitration Act provide:

"(c) If an issue referable to arbitration under the alleged agreement *is involved in an action or proceeding* pending in a court having jurisdiction to hear applications under subdivision (a) of this Section, the application shall be made therein. Otherwise and subject to Section 17, the application may be made in any circuit court.

(d) Any action or proceeding *involving an issue subject to arbitration* shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 10, pars. 102(c), (d).)

Clearly, under these sections all that is required to trigger arbitration is that the issue be involved in the action or proceeding pending. It does not have to be the issue that was raised in plaintiff's initial lawsuit. Under Illinois law, parties who execute a contract containing a valid arbitration clause are irrevocably committed to arbitrate all disputes clearly arising under the agreement. (*TDE Ltd. v. Israel* (1989), 185 Ill. App. 3d 1059, 541 N.E.2d 1281.) In *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 449, 530 N.E.2d 281, 287, the Illinois Supreme Court stated:

> "It was intended, under the Uniform Arbitration Act, on an application to compel or stay arbitration, under section 2 of the Act, that the sole question for the court to determine is whether there was an agreement to arbitrate. [Citation.] If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration."

Doubts regarding the scope of arbitrable issues ought to be resolved in favor of arbitration. (*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983), 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927; *Howells v. Hoffman* (1991), 209 Ill. App. 3d 1004, 568 N.E.2d 934.) It is not necessary for the parties to an arbitration agreement to be able to solve all disputes between them at arbitration. Rather, the court must give effect to the arbitration agreement and require those issues to be arbitrated which are covered by the agreement. In this case, the acquisition and merger agreement provided that "any unresolved disagreement between the Surviving Corporation [(Galva)] and any of the Company's former shareholders [(Heiden)] as to whether the Closing Balance Sheet has been prepared as required by this section" shall be submitted to arbitration.

Accordingly, the decision of the circuit court of Henry County denying the motion to compel arbitration is reversed, and this cause is remanded to the trial court with directions that arbitration should be compelled to the extent required by the agreement of the parties.

Reversed and remanded with directions.

McCUSKEY and SLATER, JJ., concur.