SHARON GABRIEL, Plaintiff-Appellant, v. IMMANUEL EVANGELICAL LUTHERAN CHURCH, INC., Defendant-Appellee.

Fourth District    No. 4—94—0198

Argued August 23, 1994.—Opinion filed September 30, 1994.

John E. Childress (argued) and Eric L. Grenzebach, both of Brown, Hay & Stephens, of Springfield, for appellant.

Harold M. Olsen (argued), of Olsen & Olsen, Ltd., of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Sharon Gabriel, filed suit for breach of contract after the defendant, Immanuel Evangelical Lutheran Church, Inc., withdrew its offer to employ her as a parochial school kindergarten teacher. Plaintiff's complaint alleged the offer to employ her was accepted by her before it was improperly withdrawn by church hierarchy for nonecclesiastical reasons. The trial court dismissed the complaint on first amendment grounds. (U.S. Const., amend. I.) Plaintiff appeals, contending adjudication of her complaint would not infringe upon the church's free exercise rights under the first amendment.

The facts are not in dispute. Plaintiff's complaint alleged on March 24, 1992, defendant extended her an offer of employment as a tenured kindergarten teacher for a yearly salary of $19,709, and associated fringe benefits. The written offer of employment was in the form of a "divine call," which is the method by which the Lutheran Church Missouri Synod (Missouri Synod) solicits clergy and teachers for its churches and parochial schools.

The complaint further alleged plaintiff accepted the "call" on March 10, 1993, by signing the document and delivering it to the principal of defendant's school at his office. Despite her acceptance, however, defendant later refused to honor any of its terms and failed to employ her as a teacher and, by reason of the failure to honor the contract, plaintiff suffered damages of $650,000.

Defendant filed a motion to dismiss on first amendment grounds. Defendant is a not-for-profit religious corporation engaged in the preaching and teaching of the Bible and Lutheran confessions as set forth in the constitution of the Missouri Synod. The motion alleged plaintiff is a commissioned minister of religion who was bound by the constitution and bylaws of the congregation and the Missouri Synod,

and the church's constitution makes the congregation the supreme authority as to its internal and external administration.

The motion to dismiss also argued, in addition to acceptance of the "call," each commissioned minister of religion must be "installed" by appropriate church officials before the employment relationship becomes effective. After plaintiff accepted the "call," but prior to the constitutionally required installation, the congregation, in accordance with its constitution and bylaws, voted to withdraw the issuance of the call on May 23, 1993, because plaintiff had not indicated her acceptance of it as of March 6, 1993, at which time the school board unanimously recommended to the congregation that issuance of the call be withdrawn.

The motion concluded the call had been withdrawn in conformity with the rules of the congregation's constitution, this was a matter of ecclesiastical concern finally determined by defendant through its duly constituted voters assembly and, for this reason, the court was without authority to adjudicate the complaint under the first amendment to the Constitution of the United States, and article I, section 3, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 3).

The trial court granted the motion to dismiss finding the contract in question was clearly a religious document, replete with references to church doctrine, religious teachings, and church policies. The court concluded the decision to reconsider the hiring of plaintiff was a church decision discussed and voted upon in church meetings, and whether the defendant followed the required procedure in rejecting plaintiff's employment was not for a civil court to consider because it would entail impermissible review of the decision-making process and subjective criteria used by the church in reaching its decision.

Plaintiff contends this lawsuit does not involve first amendment issues but is a simple breach of contract action over which a civil court has subject-matter jurisdiction. In plaintiff's view, defendant offered her a contract for employment which plaintiff accepted prior to defendant's revocation of the offer on nonecclesiastical grounds. Plaintiff maintains since the reason for revocation of the offer is purely secular, no first amendment issues are involved. We disagree.

■ The basic freedom of religion is guaranteed not only to individuals but also to churches in their collective capacities which must have "power to decide for themselves, free from [S]tate interference, matters of church government as well as those of faith and doctrine." (*Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church* (1952), 344 U.S. 94, 116, 97 L. Ed. 120, 136, 73 S. Ct. 143, 154.) Ecclesiastical decisions are generally inviolate; "civil courts

are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Serbian Eastern Orthodox Diocese v. Milivojevich* (1976), 426 U.S. 696, 713, 49 L. Ed. 2d 151, 165, 96 S. Ct. 2372, 2382.

■ The right to choose ministers without government restriction underlies the well-being of the religious community. (See *Kedroff*, 344 U.S. at 116, 97 L. Ed. at 136, 73 S. Ct. at 154.) The Supreme Court has consistently concluded certain civil rights protected in secular settings are not sufficiently compelling to overcome certain religious interests. (See *Gonzalez v. Roman Catholic Archbishop* (1929), 280 U.S. 1, 16, 74 L. Ed. 131, 136-37, 50 S. Ct. 5, 7.) "[Decisions of church authorities concerning] the essential qualifications of [clergy] and whether the candidate possesses them *** although affecting civil rights, are accepted in litigation before the secular courts as conclusive ***." *Gonzalez*, 280 U.S. at 16, 74 L. Ed. at 137, 50 S. Ct. at 7.

The Supreme Court has also recognized, however, in limited circumstances the church is not above the law. (See, *e.g., Jones v. Wolf* (1979), 443 U.S. 595, 61 L. Ed. 2d 775, 99 S. Ct. 3020.) In *Jones*, the Court adopted the neutral principles test, which permits a court to interpret provisions of religious documents involving property rights and other nondoctrinal matters as long as the analysis can be done in purely secular terms. A church is free to burden its activities voluntarily through contracts, and such contracts are fully enforceable in a civil court. (*Watson v. Jones* (1872), 80 U.S. (13 Wall.) 679, 714, 20 L. Ed. 666, 670.) But courts may not inquire into contractual matters whose enforcement would require "a searching and therefore impermissible inquiry" into church doctrine. *Milivojevich*, 426 U.S. at 723, 49 L. Ed. 2d at 170, 96 S. Ct. at 2387.

Despite plaintiff's focus on the allegedly secular reason offered for withdrawal of the employment offer, she agreed at oral argument that, if the process by which the church chooses teachers is an ecclesiastical matter, the reasons advanced for withdrawing the offer of employment are immaterial and review is foreclosed by the first amendment.

■ The decision of who should be appointed to speak for the church is an ecclesiastical matter to which judicial deference is mandated by the first amendment. (*Williams v. Palmer* (1988), 177 Ill. App. 3d 799, 805, 532 N.E.2d 1061, 1065.) Plaintiff is not a secular employee. Under the structure of the Missouri Synod, plaintiff is a parochial teacher who is designated as a commissioned minister of religion. The church's "Diploma of Vocation," which articulates the attributes of the "call," obligates plaintiff to a number of ecclesiastical

duties and beliefs. While plaintiff is not "clergy," it has been stated "[a]s a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered 'clergy.' " (Bagni, *Discrimination in the Name of the Lord: A Critical Evaluation of Discrimination by Religious Organizations*, 79 Colum. L. Rev. 1514, 1545 (1979).) It also does not matter that subjective employment-related decisions involve no religious beliefs. The first amendment precludes governmental interference with ecclesiastical hierarchies, church administration, and appointment of clergy. A church may adopt its own idiosyncratic reasons for appointing pastors and claim autonomy in the elaboration and pursuit of that goal. (*King's Garden, Inc. v. Federal Communications Comm'n* (D.C. Cir. 1974), 498 F.2d 51, 56.) The factors relied upon by the church need not be independently ecclesiastical in nature; they need only be related to a pastoral appointment determination. (See *Granfield v. Catholic University* (D.C. Cir. 1976), 530 F.2d 1035, 1047 (holding the salary scale of priests in a church-related institution is an internal, religious, ecclesiastical question).) Since the matter of whether to employ plaintiff as a parochial school teacher is an ecclesiastical issue into which a civil court may not inquire, the complaint was properly dismissed.

The cases cited by appellant are clearly distinguishable. In *Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 369 N.E.2d 1313, the issue was whether a church could oust a pastor and his wife from church property after his services were terminated by the church. The parties had agreed to arbitration over the right of the church to regain possession of its parsonage, and it was an arbitration award which was before the court for review. No ecclesiastical issues were raised, and the question of possession of the property was determined to be a purely secular issue. Likewise, plaintiff's citation to *Bodewes v. Zuroweste* (1973), 15 Ill. App. 3d 101, 303 N.E.2d 509, is inapposite. *Bodewes* stands only for the proposition that once a church has voluntarily entered a contract and nonecclesiastical contract rights have vested through performance, those rights cannot be abrogated. In *Bodewes*, a minister hired by the church had earned a salary through performance of the terms of the contract which the church refused to pay after the services were rendered. Nothing forbids the enforcement of church-made contracts which have been fully performed. Enforcing vested secular, contractual rights is clearly different from reviewing the subjective, ecclesiastical, personnel-appointment process of the church.

For the foregoing reasons, the judgment of the circuit court of Sangamon County dismissing the complaint on first amendment grounds is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.