712 So.2d 775 (1998)
Rabbi Robert A. GOODMAN, Appellant,
v.
TEMPLE SHIR AMI, INC., et al., Appellees.
No. 97-1477.
District Court of Appeal of Florida, Third District.
June 3, 1998.
Rehearing Denied July 29, 1998.
*776 Macaulay, Zorrilla & Robin and Raymond L. Robin, Hollywood, for appellant.
Peter A. Miller; Melvin S. Black; Robert S. Glazier; Clark D. Mervis, Miami, for appellees.
Before COPE, FLETCHER and SORONDO, JJ.
FLETCHER, Judge.
Rabbi Robert A. Goodman appeals the trial court's dismissal for lack of jurisdiction of his complaint for defamation and for breach of his employment contract against his former employer, Temple Shir Ami, Inc. [the Temple], and for defamation and tortious interference against Richard Ashenoff, a member of the Temple's board of directors. We affirm in part and reverse in part as to the Temple, and affirm as to Ashenoff.
The Temple's initial contract with Rabbi Goodman for his services as its spiritual leader originally was for two years, from July 1, 1991, through June 30, 1993, and was extended for a third year, through June 30, 1994. Prior to the expiration of that third year, the Temple and Rabbi Goodman entered into negotiations for a second contract. The parties are in dispute as to whether the second contract became binding on the Temple, but a resolution of that question is unnecessary to our conclusion. For the sake of convenience only we will make reference to the "second contract" as if it had been entered into in February, 1994 and extended the Rabbi's employment as the Temple's spiritual leader for three years.
In February and March, 1994, some members of the Temple's "executive committee" determined to oppose Rabbi Goodman's continued service. The matter was taken to the Temple's board of directors on March 29, 1994. At the board meeting, numerous concerns about the Rabbi were discussed, including various ones related to disagreement over religious concepts. Also at the meeting, board member Ashenoff stated that he had undertaken an investigation of Rabbi Goodman. The investigationaccording to Ashenoffrevealed that the Rabbi had committed a crime by striking the senior Rabbi at a temple in Chicago where Rabbi Goodman was then employed, following which Rabbi Goodman's employment was terminated by the Chicago temple, which, in turn, prompted Rabbi Goodman to unjustifiably file and prosecute an action against that temple. Rabbi Goodman's recounting of the altercation and *777 its aftermath (in his deposition) is diametrically opposed to Ashenoff's version. It is this report by Ashenoff (and other comments) that is the basis of Rabbi Goodman's defamation claim and his action for tortious interference with an advantageous business relationship against Ashenoff.
The Temple's board of directors voted against "renewing" the first contract. (From Rabbi Goodman's perspective, the board actually determined not to honor his second contract.) The members of the Temple were advised of the board's actionwhich advice included repetition of Ashenoff's statements. After these events Rabbi Goodman served until his first contract expired on June 30, 1994, and not thereafter. By agreement, Rabbi Goodman attended a conference in Chicago, as provided by the first contract.
Rabbi Goodman subsequently filed suit, alleging four basic claims: (1) against the Temple for breach of the second contract by terminating his employment as the Temple's spiritual leader; (2) against the Temple and Ashenoff for defamation; (3) against Ashenoff for tortious interference; and (4) against the Temple for breach of the first contract (for sums unpaid by the Temple for service as its Rabbi and for reimbursement of his expenses for the Chicago conference). The trial court, after limited discovery on jurisdiction, dismissed Rabbi Goodman's suit, stating:
"The Court concludes that there is no serious question that the causes of action against Temple Shir Ami are constitutionally-barred. In this case there were meetings, and at the meetings a decision was made concerning Rabbi Goodman's continued employment. That decision is ecclesiastical in nature, involving the selection of the Temple's spiritual leader, and for this reason the Court has no jurisdiction over the claims against Temple Shir Ami.
The claims against Mr. Ashenoff present a closer question. However, the Court concludes that Mr. Ashenoff made his statements in the context of Temple meetings concerning Rabbi Goodman's continued employment. The Court concludes that it has no jurisdiction over the claims against Mr. Ashenoff.
The Defendants' Renewed Motion to Dismiss is granted. The case is dismissed for lack of subject-matter jurisdiction."
R.1256-57.
We conclude that the trial court correctly dismissed the claims (with the exception of that for breach of the first contract, which we will shortly discuss). In order for the trial court to have resolved these disputes, it would have had to immerse itself in religious doctrines and concepts and "determine" whether the religious disagreements were a "valid" basis for the termination of Rabbi Goodman's services. The allegedly defamatory report and tortious interference occurred as part of this religious dispute and would require the trial court to weigh their effect on the board members as compared to the effects of the other considerations which clearly are religious disagreements. Inquiring into the adequacy of the religious reasoning behind the dismissal of a spiritual leader is not a proper task for a civil court. See, e.g., Young v. Northern Ill. Conference of United Methodist Church, 21 F.3d 184 (7th Cir.), cert. denied, 513 U.S. 929, 115 S.Ct. 320, 130 L.Ed.2d 281 (1994). Thus we affirm the trial court's dismissal of Rabbi Goodman's complaint with the following exception as to the first contract.
Rabbi Goodman served as the Temple's spiritual leader until the conclusion of the first contract, on June 30, 1994. Notwithstanding his service (according to the complaint), the Temple has failed to pay all the compensation due him and has failed to reimburse his expenses advanced by him for the Chicago conference. This claim does not create excessive entanglements with religious beliefs, and thus does not preclude civil court intervention. See Minker v. Baltimore Annual Conference of United Methodist Church, 894 F.2d 1354 (D.C.Cir.1990).
Accordingly, the trial court's dismissal order is reversed as to Rabbi Goodman's claim under the first contract. The order is otherwise affirmed. The cause is remanded for further proceedings consistent herewith.