No. 3-04-0394

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2005 

KEVIN J. JENKINS ) Appeal from the Circuit Court of

) the Tenth Judicial Circuit

Plaintiff-Appellant, ) Tazewell County, Illinois

)

v. )

)

THE TRINITY EVANGELICAL ) No. 00-L-10

LUTHERAN CHURCH, an Illinois )

Religious Corporation, and )

RODGER P. ABATIE,
 ) 
Honorable

) Kevin R. Galley

Defendants-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE LYTTON delivered the Opinion of the court:

_________________________________________________________________

Plaintiff, Kevin Jenkins, left his employment as an associate pastor at Trinity Evangelical Lutheran Church (Trinity) after a meeting with his head pastor, Roger Abatie.  Plaintiff later sued Trinity and Abatie for breach of contract, tortious interference with a contract, and defamation.  The trial court dismissed the complaint for lack of subject matter jurisdiction
 and ordered the parties to arbitrate the issues.  We hold that the trial court properly found that
 the tortious interference and defamation claims were subject to arbitration, but erred in dismissing 
the breach of contract claim.

Trinity is affiliated with the Lutheran Church-Missouri Synod (LCMS).  When plaintiff became a minister of the Missouri Synod, he agreed to be bound by the bylaws of the LCMS.  Article VIII of the bylaws requires that church disputes be settled exclusively through a binding dispute resolution procedure, except for property and contract disputes, in which jurisdiction is not exclusive.  Article VIII of the bylaws states in pertinent part,   

Preamble

"The Synod in the spirit of 1 Corinthians 6 calls upon all parties to a disagreement, accusation, controversy, or disciplinary action to rely exclusively and fully on the Synod's system of reconciliation and conflict resolution.  The use of the Synod's conflict resolution procedures shall be the exclusive and final remedy for those who are in dispute.  Fitness for ministry and other theological matters must be determined within the church.  Parties are urged, in matters of a doctrinal nature, to follow the procedures as outlined in Bylaw 2.39c.

***[The] aim [of the dispute resolution procedures] is to avoid the adversarial system practiced in society.

8.02 Exceptions

This chapter does not prescribe an exclusive remedy in the following matters unless they involve theological, doctrinal, or ecclesiastical issues.

1. Disputes concerning property rights (e.g., real estate agreements, mortgages, fraud, or embezzlement)

2. Disputes arising under contractual arrangements of all kinds (e.g., contracts for goods, services, or employment benefits)

8.09 Procedures of Dispute Resolution Panel

e. The final decision of the Review Panel shall

1. be binding upon the parties to that dispute and not be subject to further appeal[.]

On November 1, 1993, plaintiff was hired as an associate pastor at Trinity.  On January 13, 1999, Abatie, who was the administrative pastor at Trinity, convened a meeting with two other pastors and plaintiff to discuss certain allegations of sexual impropriety made by congregants against plaintiff.  The parties agree that at the end of the meeting there was an agreement that plaintiff would resign his pastorate.  However, plaintiff also claims that, in return for his resignation, Trinity agreed to pay plaintiff's salary, health insurance and pension benefits for the remainder of the calendar year.  Plaintiff alleges that Abatie submitted plaintiff's resignation to the president of the congregation but not the claimed agreement for salary and benefits.

Plaintiff filed a complaint on January 18, 2000 alleging that Abatie, 1) acting on behalf of Trinity, breached the agreement to continue to pay his salary and benefits, 2) interfered with his contract with Trinity, and 3) defamed him by telling members of the congregation that plaintiff "did the nasty" with a female congregant. 

Defendants answered the complaint denying the substantive allegations but also filed several motions to dismiss.  Defendants' final motion to dismiss, filed some three and one-half years after the original complaint, claimed that the trial court had no subject matter jurisdiction because t
he LCMS bylaws mandate arbitration.  The trial court agreed and granted the motion.

I. WAIVER OF ARBITRATION

Plaintiff argues that since defendants did not specifically raise the issue of arbitration until three and one-half years after the filing of his complaint, the issue was waived.

Illinois courts favor using arbitration as a matter of settling disputes.  
Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC.
, 319 Ill. App. 3d 1089, 746 N.E.2d 294 (2001).  A contractual right to arbitrate can be waived like any other contractual right.  
Schroeder Murchie Laya
, 319 Ill. App. 3d 1089, 746 N.E.2d 294.  Waiver may occur when a party's conduct is inconsistent with its right to arbitrate, indicating an abandonment of that right.  
Lundy v. Farmers Group, Inc.
, 322 Ill. App. 3d 214, 750 N.E.2d 314 (2001).  Because public policy concerns favor arbitration, the courts disfavor a finding of waiver by a party.  
Board of Managers of the Courtyards at the Woodlands Condominium Assoc. v. IKO Chicago, Inc.
, 183 Ill. 2d 66, 697 N.E.2d 727 (1998).

I
llinois courts have used several factors to determine whether a party's conduct is inconsistent with an agreement to arbitrate and an abandonment of its rights.  Factors indicating waiver include filing an answer without asserting the right to arbitrate, instituting legal proceedings and participating in a trial on the merits, and moving for summary judgment.  A party does not waive its rights when it files a complaint, contests venue, or includes an affirmative defense of arbitration in its answer along with a counterclaim in the alternative.  
Schroeder Murchie Laya
, 319 Ill. App. 3d at 1096, 746 N.E.2d at 300.  

In 
Kostakos v. KSN Joint Venture No. 1
, 142 Ill. App. 3d 533, 491 N.E.2d 1322 (1986), a complaint was filed and defendants participated in discovery.  Fifteen months later, defendants filed their answer raising an affirmative defense of arbitration.  Seven months later, the trial court set the matter for trial and defendants brought their motion to compel arbitration, which the trial court allowed.  The appellate court affirmed, stating that abandonment of the right to arbitrate was not determined by time passing or "papers filed", but by the types of issues submitted.  
Kostakos
, 142 Ill. App. 3d at 536-37, 491 N.E.2d at 1325.

In this case, plaintiff filed his complaint on January 18, 2000. On June 7, 2000, defendants filed a motion for summary judgment requesting that "the plaintiff's cause of action be dismissed", asserting among other things, that the LCMS dispute resolution procedure was the exclusive remedy for "church related controversies."  The motion was denied.  On January 19, 2001, defendants filed an answer specifically raising the affirmative defense of the court's lack of jurisdiction because of the ecclesiastical dispute resolution procedure provided for in the LCMS bylaws.  Defendants then filed several additional motions to dismiss and motions for summary judgment and participated in extensive discovery before filing their second motion for involuntary dismissal based on the LCMS bylaws in June 2003.

Defendants did not waive their right to arbitrate.  Far from acting in a manner inconsistent with Article VIII of the bylaws, they raised the issue twice within a reasonable period after the filing of the complaint.  After the June 7, 2000 motion was denied, defendants had little choice but to participate in the litigation and file pleadings.  When they filed their answer and affirmative defenses, the issue was again joined until the trial court granted their second motion.  
Defendants' actions were consistent with their right to arbitrate and did not indicate an abandonment of that right.

II. AGREEMENT TO ARBITRATE

A. Breach of Contract

Plaintiff claims that Abatie committed Trinity to continue paying his salary and benefits until the end of the calendar year if plaintiff resigned, but Abatie reneged on the agreement.  Defendants reply that any alleged contract was an internal dispute of a "theological, doctrinal, or ecclesiastical" nature and was within the jurisdiction of Article VIII of the bylaws.

When plaintiff became a pastor, he agreed to abide by the constitution and the bylaws of the LCMS.  Article VIII of the bylaws requires that ecclesiastical disagreements be settled by the "Synodical Dispute Resolution" procedure.  However, LCMS bylaws give civil courts jurisdiction over contract disputes as long as they do not involve ecclesiastical issues.  The bylaws appear to adopt the "neutral principles" doctrine developed by the civil courts.  See 
Jones v. Wolf
, 443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979).  Thus, we must examine whether the alleged agreement fits within neutral principles that would allow a civil court to hear the claim.

Generally, courts will not interfere in canonical or ecclesiastical controversies regarding clergymen's employment at a church.  
Serbian Eastern Orthodox Diocese v. Ocokoljich
, 72 Ill. App. 2d 444, 219 N.E.2d 343 (1966).  The first amendment "severely circumscribes the role that civil courts may play in resolving church property disputes."  
Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Church
, 393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969).  However, certain neutral principles may apply to property and contract disputes.  
Jones v. Wolf
, 443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979); 
Bodewes v. Zuroweste
, 15 Ill. App. 3d 101, 303 N.E.2d 509 (1973).  Neutral principles must be "completely secular in operation . . . yet flexible enough to accommodate all forms of religious organization and polity," relying exclusively on objective, well-established concepts of property law familiar to lawyers and judges.  
Jones v. Wolf
, 443 U.S. at 603, 99 S. Ct. at 3025, 61 L. Ed. 2d at 784-85 (1979).  Courts can resolve disputes that arise within a church setting if the dispute does not require determination of any doctrinal issues.  
Ervin v. Lilydale Progressive Missionary Baptist Church
, 351 Ill. App. 3d 41, 43, 813 N.E.2d 1073 (2004).  If the analysis can be done in secular terms, civil courts may exercise jurisdiction.  
Ervin
, 351 Ill. App. 3d at 43, 813 N.E.2d at 1075.  A dispute over payments due under an employment contract is justiciable in the civil courts.  
Bodewes v. Zuroweste
, 15 Ill. App. 3d 101, 303 N.E.2d 509.

By using the neutral principles approach, courts avoid the quagmire of trying to determine church doctrine, but can still determine disputes that are essentially civil in nature even though religious societies are parties.  "It was not the intent of [the first amendment]... that civil and property rights should be unenforceable in the civil court simply because the parties involved might be church and members, officers, or the ministry of the church."  
Bodewes
, 15 Ill. App. 3d at 103, 303 N.E.2d at 511.

Thus, the threshold question is whether plaintiff's claim can be resolved without inquiring into the church's religious doctrine. Here, the dispute over salary claimed under the alleged agreement between the parties is a civil controversy.  A church can contract with its own pastors just as it can with outside parties.  An agreement for wages and benefits is governed by principles of civil contracts law and can be enforced by our courts.  See 
Bodewes
, 15 Ill. App. 3d at 103-104, 303 N.E.2d at 511; see generally 
Gabriel v. Immanuel Evangelical Lutheran Church
, 266 Ill. App. 3d 456-460, 640 N.E.2d 681 (1994) ("Nothing forbids the enforcement of church-made contracts which have been fully performed.  Enforcing vested secular, contractual rights is clearly different from reviewing the subjective, ecclesiastical, personnel-appointment process of the church.").
  Other jurisdictions have also held that enforcement of agreements for payment of a pastor's salary can be enforced in the civil courts.  See 
Goodman v. Temple Shir Ami, Inc.
, 712 So. 2d 775 (Fla. App. 1998) (temple refused to pay compensation due to dismissed rabbi); 
Dobrota v. Free Serbian Orthodox Church
, 191 Ariz. 120, 952 P.2d 1190 (Ariz. App. 1998) (court had power to calculate money owed dismissed priest.);  
Fellowship Tabernacle, Inc. v. Baker
, 125 Idaho 261, 869 P.2d 578 (Idaho Ct. App. 1994) (breach of contract claim may be heard in civil courts); 
Mayhew v. Vanway
, 371 S.W.2d 90 (Tex. App. 1963) (court assumed jurisdiction of minister's employment contract with church); 
Pearson v. Church of God
, 325 S.C. 45, 478 S.E.2d 849 (1996) (terms of minister's pension plan can be reviewed by courts); 
Way v. Ramsey
, 192 N.C. 549, 135 S.E. 454 (1926) (contract law governs church's liability for pastor's salary).

Defendants argue that the breach of contract claim is merely part of plaintiff's loss of his calling and is incidental to his divestment as a minister.  See 
LeDuc v. Normal Park Presbyterian Church
, 142 F.2d 105 (7th Cir. 1944) (salary claim dependent on proper termination and court will not review propriety of church's dismissal of plaintiff); 
Owens v. Second Baptist Church of LaGrange
, 163 Ill. App. 3d 442, 516 N.E.2d 712 (1987) (parsonage, a part of pastor's compensation package, must be vacated after his dismissal).  In 
LeDuc
 and 
Owens
, the salary claims were merely ancillary to the pastor's dismissal from the ministry.  In this case, plaintiff's resignation is not the issue; he alleges only that in return for resigning, he was made certain promises.

This issue closely resembles the contention raised in 
Gipe v. Superior Court of Orange County
, 124 Cal. App. 3d 617, 177 Cal. Rptr. 590 (1981).  In 
Gipe
, the plaintiff minister alleged that the church had promised him one week of severance pay for each year of his service if he returned all the property of the church that he had in his possession.  After the minister returned the property, he was refused the severance pay.  The trial court refused to allow the claim to be argued by the state labor board, claiming the court was allowing an impermissible involvement in religious affairs.  The appellate court reversed, saying that,

"[t]he argument might be persuasive if the dispute were over the question of whether or not the church had the right to discharge petitioner, but no such question is involved.  The only questions appear to be whether the 
 church is required to pay severance pay conditionally promised and whether the conditions were performed.  That is a contract matter that can be resolved without resolving the ecclesiastical controversy between petitioner and the church.  We are unable to accept the argument that requiring a church to pay its discharged minister in accordance with its contract will have a significant chilling effect upon the church's exercise of its right to discharge its ministers on account of doctrinal or other ecclesiastical differences."  
Gipe
, 124 Cal. App. 3d. at 628-29.

Like the severance pay in 
Gipe
, we believe that Abatie's alleged promise of salary and benefits was not intimately related to the church's right to discharge plaintiff, but became a contract right that, if proven, plaintiff could enforce.  "A church is always free to burden its activities voluntarily through contracts, and such contracts are fully enforceable in civil court."  
Minker v. Baltimore Annual Conference of United Methodist Church
, 894 F.2d 1354, 1359 (1990); (citing 
Watson v. Jones
, 80 U.S. 679, 20 L. Ed. 666 (1871)). The contractual issue of compensation due is not ecclesiastical in nature and is excepted from arbitration by the LCMS bylaws.  It does not violate neutral principles.  The trial court erred in dismissing plaintiff's breach of contract counts.

B. Tortious Interference With A Contract and Defamation

Plaintiff also contends that his claims for tortious interference with a contract and defamation should be heard in the circuit court.  We disagree.

Agreements to arbitrate are valid in Illinois under a mutual promise to arbitrate.  
Bishop, et al. v. We Care Hair Development Corp.
, 316 Ill. App. 3d 1182, 738 N.E.2d 610 (2000).  Under the Illinois Arbitration Act, (Act) (710 ILCS 5/1 et seq. (West 2000)), the parties are bound to arbitrate those issues which they have agreed to arbitrate.  
Ozdeger v. Altay
, 64 Ill. App. 3d 1036, 382 N.E.2d 268 (1978).  If a valid agreement to arbitrate exists, it will be enforced by the court.  710 ILCS 5/2(a); 
City of Peru v. Illinois Power Co.
, 258 Ill. App. 3d 309, 630 N.E.2d 454 (1994)
.  LCMS bylaws do not exempt tort claims from arbitration.  Plaintiff is therefore bound by his agreement to abide by the bylaws and must submit his tort claims to the LCMS dispute resolution procedures.

III. STAY OF PROCEEDINGS

The trial court dismissed the complaint without granting a stay of the action pending the outcome of the binding arbitration.  On appeal, plaintiff urges us to amend the order to stay the proceedings on the arbitrable issues as provided under section 2(d) of the Act.  710 ILCS 5/2(d) (West 2000).

A.  Tortious Interference with a Contract

Plaintiff alleged that, out of jealousy, Abatie, without authority or justification, wilfully intended to deprive plaintiff of his employment and livelihood by not delivering all of the agreement for plaintiff's resignation to the president of the congregation.

Plaintiff asks this court to evaluate Abatie's motives in making the alleged promises.  Essentially, plaintiff challenges the reasoning and methods behind Abatie's acts.  His challenge is not that the church failed to follow its own procedures for dismissal, (see 
Ervin v. Lilydale Progressive Missionary Baptist Church
, 351 Ill. App. 3d at 46, 813 N.E.2d at 1077), but rather he seeks to explore whether the policy behind his dismissal was faulty.  A church may adopt its own idiosyncratic reason for appointing pastors and claim autonomy in the elaboration and pursuit of that goal.  
Gabriel v. Immanuel Evangelical Lutheran Church
, 266 Ill. App. 3d at 460, 640 N.E.2d 681.  To do otherwise would require the court to inquire into the judgments made by church officials relative to plaintiff's dismissal.  Plaintiff's allegations of jealousy and lack of authority or justification would require the court to explore the rules, policies and decisions of the church.  We will not interfere with the administration and discipline of religious bodies.  
Williams v. Palmer
, 177 Ill. App. 3d 799, 804, 532 N.E.2d 1061 (1988).  Thus, we affirm the trial court's dismissal of this count of the complaint.

B.  Defamation

According to the allegations in the complaint, Abatie made his comments to congregants about plaintiff after plaintiff resigned from Trinity.  We recognize that statements made after plaintiff's resignation can be an appropriate part of the dismissal process.  However, from the record before us, we cannot determine whether Abatie's remarks were inextricably involved in the discipline, faith, administration or rules of the church.  
Callahan v. First Congregational Church of Haverhill
, 441 Mass. 699, 715, 808 N.E.2d 301, 313 (2004).  Thus, under the authority granted to us under Supreme Court Rule 366(a)(134 Ill. 2d R. 366(a)), we modify the trial court's order to stay the proceeding on the defamation count.

If, after arbitration, an application to vacate is made under section 12 of the Act (710 ILCS 5/12 (West 2000)), the trial court shall review the record of the arbitration proceedings to determine if constitutional strictures apply, that is, whether Abatie's remarks fall outside ecclesiastical concern so that the court may accept jurisdiction.  See 
Mitchell v. Milholland
, 106 Ill. 175 (1883); 
Callahan
, 441 Mass. at 715-16, 808 N.E.2d at 313-14.

IV. OTHER ISSUES

A.  Impartiality of Arbitrators

Plaintiff argues that the dispute resolution procedure calls for arbitrators who are either members or employees of the Synod.  He claims that these people cannot be impartial, making the agreement to arbitrate invalid.  Defendants respond that although the dispute resolution panel is composed of the LCMS pastors and laymen, they do not have an interest in the outcome of the proceedings.

The purpose of the LCMS dispute resolution procedure is to resolve disputes within the church.  Plaintiff has not pointed to any specific prejudice he would suffer under the bylaws, but only a generalized fear of partiality.  This anxiety is insufficient to overturn the LCMS arbitration process.  See 
J&K Cement Construction, Inc. v. Montalbano Builders, Inc.
, 119 Ill. App. 3d 663, 456 N.E.2d 889 (1983); see also 
Harter v. Iowa Grain Company
, 220 F.3d 544, 555 (7th
 Cir. 2000) (Prior business association between arbitrator and party is insufficient evidence of bias.)

Plaintiff consented to this procedure when he became a pastor.  Section 3 of the Act (710 ILCS 5/3) provides that, "[i]f the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed."  Plaintiff is required to submit to the procedures outlined in the bylaws.

B.  Hartwig Affidavit

Plaintiff argues that the affidavit of Dr. Raymond Hartwig, secretary of the LCMS, filed in support of defendants' motion to dismiss, failed to comply with Supreme Court Rule 191 (134 Ill. 2d. R. 191) and should have been stricken.  He contends that the affidavit presents no facts, only conclusions, and that the papers attached are not certified.

Defendants answer that plaintiff waived this issue by failing to object to the affidavit in the trial court.  Defendants also argue that the affidavit was proper as evidence and that offering opinions by affidavit is appropriate.

Plaintiff objected to the affidavit in the trial court, so the issue is not waived.  Further, defendants' affidavit does not comply with Rule 191; it does not contain facts, presents conclusions, and the attachments are not certified.  However, reversing the trial court's denial of the motion to strike does not require remand for a trial.  Defendants' motion to dismiss was supported by more than Hartwig's affidavit, and plaintiff has offered no argument that defendants' motion would have been denied but for the affidavit.  Any error is harmless.

V. CONCLUSION

The order of the circuit court of Tazewell County is reversed in part, affirmed in part and modified.

Reversed in part; affirmed in part; modified.

HOLDRIDGE and SCHMIDT, JJ., partially concurring/partially dissenting.

JUSTICE HOLDRIDGE, concurring in part and dissenting in part:

I concur in the majority's disposition except for its conclusion that plaintiff's breach of contract claim is not subject to arbitration.

Regarding the breach of contract claim, the majority uses first-amendment law to decide a non-first-amendment issue.  The pivotal question does not involve ascertaining the line between church and state; rather, it involves the meaning of the word "ecclesiastical" as that word is used in the Synod's bylaws.  Focusing solely on the presence or absence of "neutral principles" is thus misleading because such an approach defines the word "ecclesiastical" according to unrelated cases rather than the document in which it appears.

The bylaws provide an exception to arbitration for contractual arrangements involving employment benefits.  However, the bylaws also state that the exception does not apply in cases involving ecclesiastical issues.  In determining the scope of the word "ecclesiastical" in this context, we should be guided by the plain language of the bylaws.  According to that language, all internal disputes and disagreements constitute "a matter of grave concern for the whole church."  Moreover, the bylaws explicitly advocate rejection of the "win lose" attitude that prevails in secular conflict.  Instead of engaging in such conflict, parties should "proceed with one another with ʻthe same attitude that was in Christ Jesusʼ (Phil. 2:5)."  Indeed the bylaws call upon "all parties to a disagreement" to utilize the Synod's internal system for dispute resolution.

Such language reflects meaning that gets lost in a mere "neutral principles" analysis.  I acknowledge that a standard employment contract would qualify under the exception to arbitration set forth in the bylaws.  However, the instant alleged contract is not standard; it is an inducement to resignation in connection with allegations that a pastor made inappropriate sexual contact with a parishioner.  I do not believe we can cleanly excise the alleged agreement from its context; the agreement is inevitably bound up with the circumstances in which it arose.  Accordingly, I believe this scenario falls under the class of conflicts identified in the bylaws as "a matter of grave concern" and detrimental to the "body of Christ" (
i.e.
, the whole church).

At a minimum, there is a legitimate question about whether the bylaws require arbitration.  Accordingly, we should affirm the judge's order.  See 
Heiden v. Galva Foundry Co.
, 223 Ill. App. 3d 163 (1991) (noting that doubts should be resolved in favor of arbitration).  The majority's analysis would be apt in determining whether plaintiff's breach of contract claim should be dismissed outright or merely stayed pending arbitration.  However, that analysis should not govern the determination of whether an arbitration agreement exists in the first place.

Accordingly, I respectfully dissent from the portion of the majority's disposition dealing with plaintiff's breach of contract claim.  I concur in the remainder of the disposition.

JUSTICE SCHMIDT, dissenting in part and concurring in part:

_________________________________________________________________

I dissent only from that portion of the majority decision dealing with the defamation count.  I think it is clear from the record that constitutional strictures prevent the court from exercising jurisdiction over the defamation count against Abatie.   For purposes of this review, we must, of course, accept the allegations of the complaint as true.  Count I of the complaint seeks damages against Abatie for defamation.  The relevant allegations in count I are as follows:

     "2. Defendant RODGER P. ABATIE ('ABATIE') resides

in Pekin, Tazewell County, Illinois; and at all times

stated herein Defendant ABATIE has been employed by 

the Defendant TRINITY as administrative pastor, a 

position in which he has served since June, 1990.

   16. During the period of January 30, 1999 to 

the present, ABATIE has often stated to persons in    

the TRINITY congregation, in Lutheran community and 

in the Lutheran Church--Missouri Synod of Rev. JENKINS

that 'he had an affair...{a female congregant}', that

Rev. JENKINS 'did the nasty' with...{a female 

     congregant}, and that Rev. JENKINS' conduct was 'bad,

very bad', and that Rev. JENKINS had to resign because

his actions with a congregant had disgraced JENKINS

and TRINITY.

     17.  In committing the acts set forth above,

Defendant ABATIE acted with the knowledge that the

statements were false and with reckless disregard as

to whether the statements were false or not and

maliciously spread rumors and false statements in 

the community."

The majority stays the decision on the defamation count pending arbitration and then instructs the trial court to review the arbitration proceedings to determine "whether Abatie's remarks were inextricably involved in the discipline, faith, administration or rules of the church."  Slip op. at 14.  I disagree.  I would affirm the dismissal of the defamation count.

While I do not pretend to be an expert on scripture, I feel confident that Reverend Abatie did not find the phrase "did the nasty" in the book of Genesis or the four Gospels.  Nonetheless, I see no qualitative difference between the statements allegedly made and a hypothetical statement that "Reverend Jenkins is no longer with us because his conduct did not comply with that expected of Lutheran ministers."  Very significantly, plaintiff alleges that the defamatory statements were made by Abatie, the administrative pastor and solely within the Lutheran church community.

I find a statement from the United States Court made over a century ago to be relevant here: 

     "But it is a very difficult thing where a subject-

matter of dispute, strictly and purely ecclesiastical 

in its character,-- a matter over which the civil courts

exercise no jurisdiction,-- a matter which concerns 

theological controversy, church discipline, ecclesiastical

government, or the conformity of the members of the 

church to the standard of morals required of them,-- 

becomes the subject of its action.  It may be said

here, also, that no jurisdiction has been conferred

on the tribunal to try the particular case before it,

or that, in its judgment, it exceeds the powers

conferred upon it, or that the laws of the church do 

not authorize the particular form of proceeding adopted;

and, in a sense often used in the courts, all of those

may be said to be questions of jurisdiction."  
Watson

v. Jones, 
80 U.S. (13 Wall.) 679, 733, 20 L. Ed. 666,

678 (1872).

Because the comments were made by a pastor in the church solely to the church community and related to why defendant was no longer a pastor at the church, I cannot fathom a set of facts in which the civil courts would have jurisdiction to hear this dispute.  Reverend Abatie's remarks, made solely within the church, were either proper under church policy, or they were not.  Either way, the first amendment, in my opinion, dictates that this matter be resolved within the Lutheran church.

The general rule is that courts should be loath to assert  jurisdiction over internal church disputes.
  Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church
, 393 U.S. 440, 21 L. Ed. 658, 89 S. Ct. 601 (1969); 
Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich
, 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976).