LEE I. WIGOD, Petitioner-Appellant, v. CHICAGO MERCANTILE EXCHANGE *et al.*, Defendants-Appellees.

First District (5th Division)  No. 85—0186

Opinion filed February 14, 1986.—Rehearing denied March 17, 1986.

Kenneth H. Denberg, Robert A. Vanasco, and Susan K. Sekuler, all of Chicago, for appellant.

Jerrold E. Salzman and Richard S. Davis, both of Freeman, Freeman & Salzman, S.C., of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Lee I. Wigod brought this action to vacate an arbitration award made by an arbitration committee of the defendant Chicago Mercantile Exchange (CME) and to enjoin collection of the award. Plaintiff now appeals from an order of the circuit court of Cook County dismissing that complaint and confirming the arbitration award. The sole issue on appeal is whether CME's arbitration rules, to which plaintiff

concededly has agreed to adhere, require the plaintiff to submit to arbitration.

We find that the rules do not establish mandatory arbitration and therefore we reverse.

The pertinent facts are not in dispute. When he became a member of the CME, the plaintiff signed an agreement to abide by all the rules, orders and bylaws of the CME. The following CME rules pertain to arbitration of members' disputes:

"CME Rule 600

DISPUTES ARBITRATED.—It is declared to be contrary to the objectives and policy of the Exchange that members should engage in litigation over disputes involving a transaction upon the Exchange, relating to such transaction or otherwise relating to the Exchange or to their membership in the Exchange. When any such dispute occurs between members it shall be promptly reported to the President by the party claiming to be aggrieved. The president shall then determine whether or not the dispute shall be arbitrated or resolved by another committee or by the Board, shall so notify the parties in writing and, if it is to be arbitrated, submit a form of arbitration agreement for their signatures. A member receiving notice from the President that the matter is to be arbitrated shall have 10 days in which to file an appeal with the Board. The appeal shall be in writing and shall state the member's reasons for refusing to arbitrate. The Board shall, after hearing, reverse or affirm the ruling of the President. Any member who refuses to arbitrate after ruling of the President or ruling of the Board after appeal, or any member who refuses to comply with a final arbitration award, shall be guilty of a major offense."

"CME RULE 602

REFERENCE TO ARBITRATION COMMITTEE.—Upon execution of an arbitration agreement, a panel comprised of the Chairman and five other members selected by the President shall hear the matter. The Chairman, who may vote only in the case of a tie, shall conduct the hearing. In the event there is an alternate Chairman, the Chairman of the Board shall determine who will preside over the hearing.

Each of the parties to the arbitration may strike one member of the panel designated by the President, in which even that member shall be excused from hearing the matter. The President shall then select alternate members from the Arbitration Committee to constitute a panel of five members for that hear-

ing. The matter submitted to arbitration shall be heard within 10 days from the date of submission unless good cause can be shown to the panel."

"CME RULE 608

JURISDICTION OF PANEL OR BOARD NOT OPEN TO QUESTIONS.—Any person who submits a controversy to arbitration or appeals to the Board from an award by the arbitration panel, or who takes any steps therein, shall be conclusively presumed to have voluntarily recognized the jurisdiction of the arbitration panel and the Board to hear and determine such controversy."

On September 19, 1984, defendant Robert S. Alpert, also a CME member, bought 20 stock-price index contracts, allegedly on plaintiff's instructions. Plaintiff refused to accept the contracts, asserting that he had not ordered them. Alpert took them into his own account and sold them the following day for a claimed loss of $33,000. Alpert then filed an arbitration claim against plaintiff with the CME.

The CME informed plaintiff by letter that if he did not believe the matter was appropriate for arbitration he had 10 days to file an appeal with the CME board of governors. However, if he agreed to the arbitration he was asked to sign and return an arbitration agreement form. Plaintiff did neither. Instead, he informed the CME, through his attorneys, that he would not submit to the jurisdiction of the arbitration committee.

An arbitration hearing was scheduled for October 24, 1984. Plaintiff informed the CME that he would not appear. Following this hearing, at which the testimony of Robert Alpert and other witnesses was heard, the arbitration committee ordered that plaintiff remit to Alpert $33,175, which included a $125 arbitration fee. Plaintiff was informed that the award would become final unless he filed a written notice of appeal with CME's president within 10 days. Plaintiff failed to perfect such an appeal and instead brought this action.

At the hearing below, the only testimony heard was that of Gerald D. Beyer, senior vice-president of the legal and regulatory affairs division of the CME. Beyer testified that he served as in-house counsel to the CME and was also responsible for arbitration conducted by the CME. According to Beyer, the CME had consistently interpreted its rules as providing for compulsory arbitration. He noted that when the CME submitted its Rule 600 to the Federal agency regulating commodity exchanges, the Commodity Futures Trading Commission (CFTC), the CME informed the CFTC that arbitration was mandatory for its members.

Beyer was questioned about the reference in Rule 602 to the arbitration panel hearing the matter "[u]pon execution of an arbitration agreement." He explained that provisions concerning execution of such an agreement were merely intended to notify the CME whether a member intended to appeal the issue of arbitrability, so that the CME would know when to schedule arbitration hearings.

Beyer was also questioned about amendments to Rule 600, made after this dispute ensued, which included new language providing that disputes between members "shall be resolved in accordance with the provisions of the rules contained herein." An official explanation included with the rule states that the sentence was added "to make express [CME's] policy of requiring members to resolve disputes within the Exchange." The explanation also characterizes the changes as clerical in nature. In his testimony, Beyer also stated that these changes were merely clerical or cosmetic. The record establishes that Rule 602 was also amended by, *inter alia*, deleting the reference to execution of an arbitration agreement.

After hearing this evidence and the arguments of counsel, the circuit court concluded that arbitration of the dispute at issue was mandatory and accordingly dismissed plaintiff's complaint and confirmed the arbitration award.

■ Under the terms of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, par. 101 *et seq.*) persons not parties to a valid arbitration agreement cannot be compelled to submit to arbitration. (*Mid-America Regional Bargaining Association v. Modern Builders Industrial Concrete Co.* (1981), 101 Ill. App. 3d 83, 427 N.E.2d 1011.) The bylaws of a corporation may constitute the requisite written agreement to arbitrate. *Van C. Argiris & Co. v. Pain/Wetzel & Associates, Inc.* (1978), 63 Ill. App. 3d 993, 380 N.E.2d 825.

■ The words of corporate bylaws are to be interpreted according to their ordinary, popular sense. (*Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 458 N.E.2d 1317; *Nelson v. Board of Trade* (1895), 58 Ill. App. 399.) Furthermore, bylaws, like statutes, should be construed, if possible, so that no clause or sentence is rendered superfluous. See *People v. Singleton* (1984), 103 Ill. 2d 339, 469 N.E.2d 200.

■ Applying these tenets to the rules before us, it is apparent that, whatever the intentions of the drafters may have been, arbitration was not made compulsory for members of the CME under the express terms of these rules. Rule 600 merely states that litigation between members is contrary to CME policy; such litigation is not expressly prohibited. Although CME's president is given the right to

initially determine whether a dispute should be arbitrated, he is then required to submit an arbitration agreement to the parties for their signatures. Rule 602 then provides that arbitration will commence upon execution of the agreement. Again, the rules do not require a member to sign such an agreement. If arbitration were compulsory, then these provisions concerning execution of arbitration agreements would be superfluous, as would the provision of Rule 608 concerning voluntary recognition of the jurisdiction of the arbitration panel and the board.

It is noteworthy that these rules provide for penalties to be imposed upon members who refuse to submit to arbitration. The plaintiff here chose to accept those penalties rather than submit to arbitration, a choice clearly provided by Rule 600, which provides, *inter alia*, that members refusing to comply with a final arbitration award shall be guilty of a major offense.

On these bases, we find that the circuit court erred in dismissing plaintiff's complaint and in confirming the arbitration award.

The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P.J., and PINCHAM, J., concur.