THE CITY OF PERU, Plaintiff-Appellee, v. ILLINOIS POWER COMPANY *et al.*, Defendants-Appellants (Illinois Municipal Electric Agency, Intervenor-Appellee).

Third District     No. 3—93—0803

Opinion filed January 20, 1994.—Rehearing denied April 15, 1994.

Gary P. Pasek, of Illinois Power Co., of Decatur, and James A. McPhedran, of Anthony C. Raccuglia & Associates, of Peru, for appellants.

Troy A. Fodor, of Douglas G. Brown, P.C., of Springfield (Douglas G. Brown, of counsel), for appellee Illinois Municipal Electric Agency.

Scott J. Ganassin, of Schweickert & Ganassin, of Peru (Douglas J. Schweickert, of counsel), for appellee City of Peru.

JUSTICE McCUSKEY delivered the opinion of the court:

The City of Peru (Peru) filed a complaint for injunctive relief against the defendant, Illinois Power Company (Illinois Power). Illinois Power later filed a motion to compel the arbitration of the dispute. The motion was based upon an arbitration provision contained in a power coordination agreement between Illinois Power and the Illinois Municipal Electric Agency (IMEA). The trial court denied the motion to compel arbitration, and Illinois Power filed this interlocutory appeal.

Illinois Power raises two issues on appeal: (1) whether Peru should have been compelled to arbitrate the dispute based upon the

power coordination agreement signed in 1992 (the 1992 Agreement); and (2) whether Peru should have been compelled to arbitrate based upon the power coordination agreement signed in 1986 (the 1986 Agreement).

Following our careful review of the record, we conclude that the trial court properly found Peru could not be compelled to arbitrate the dispute based upon the 1992 Agreement. The record clearly shows that Peru was not a party to the 1992 Agreement. We also conclude that the trial court correctly determined that Peru could not be compelled to arbitrate the dispute based upon the 1986 Agreement. Although Peru was a party to the 1986 Agreement, that agreement was expressly cancelled by the 1992 Agreement. Accordingly, we affirm the ruling of the trial court.

On April 21, 1993, Peru filed a verified complaint seeking injunctive relief against Illinois Power. Peru also filed a motion for a temporary restraining order. Peru alleged that it was a distributor of electric power and was a member of IMEA. IMEA supplied Peru with wholesale electric power. Peru also alleged that Illinois Power began providing electric power to one of Peru's customers, Central Illinois Trucks (CIT), on April 21, 1993. Peru alleged that this action violated the 1992 Agreement between IMEA and Illinois Power. A copy of the lengthy 1992 Agreement was attached to the complaint.

The trial court entered a temporary restraining order on April 21, 1993. It found that Peru had a legitimate and protectable business interest in maintaining CIT as a customer of its electric power. As a result, Illinois Power was restrained from providing electric power to CIT until further order of the court.

On May 13, 1993, IMEA filed a petition for leave to intervene in the action. It alleged that the dispute between Peru and Illinois Power did not involve the 1992 Agreement "but rather is a dispute between two retail suppliers of electricity as to which party will provide electricity to a particular customer." IMEA further alleged that it was a party to the 1992 Agreement and would be bound by the court's interpretation of the applicability of the Agreement. IMEA therefore requested leave to intervene in the action.

On May 21, 1993, the court granted IMEA's petition to intervene. The court also allowed Peru to file an amended complaint. In its amended complaint, Peru alleged that Illinois Power's attempt to provide electric power to CIT was a violation of section 14 of the Electric Supplier Act (220 ILCS 30/14 (West 1992)). Peru did not mention or rely upon the 1992 Agreement between Illinois Power and IMEA.

On June 18, 1993, Illinois Power filed a motion to dismiss Peru's

amended complaint and to compel arbitration. Illinois Power argued that the actual dispute between the parties required an interpretation of the 1992 Agreement. Therefore, Illinois Power argued that the dispute was covered by the arbitration provision in the 1992 Agreement. As an alternative argument, Illinois Power pointed out that it had entered into an agreement with IMEA in 1986. The 1986 Agreement also contained an arbitration provision. Peru had adopted the 1986 Agreement by ordinance and was a party to the 1986 Agreement. Illinois Power therefore argued that Peru was bound by the arbitration provision in the 1986 Agreement.

On August 4, 1993, Illinois Power filed an additional motion to compel arbitration and to stay the trial court proceedings. A hearing was held on September 16, 1993. Following the hearing, the court denied Illinois Power's motion. The court found that Peru was a third-party beneficiary of the 1992 Agreement. The court also found that Peru was not a party to the arbitration provision in the 1992 Agreement and was not bound by the arbitration provision. Furthermore, the court found that the dispute between Illinois Power and Peru did not come within the scope of the 1992 Agreement and was not covered by the arbitration provision. Additionally, the court found that the 1986 Agreement did not apply to the dispute. After its motion to reconsider was denied, Illinois Power filed its notice of interlocutory appeal.

On appeal, Illinois Power argues that the trial court erred in denying its motion to compel arbitration. We initially note that the sole question before a reviewing court in an interlocutory appeal is whether there was a sufficient showing to sustain the trial court's order granting or denying the relief sought. *Glenn H. Johnson Construction Co. v. Board of Education* (1993), 245 Ill. App. 3d 18, 22, 618 N.E.2d 208, 211.

Illinois Power first contends that the trial court should have ordered Peru to arbitrate the dispute based upon the arbitration provision contained in the 1992 Agreement. At a hearing to stay judicial proceedings and compel arbitration, a trial court should concern itself *solely* with whether an agreement exists to arbitrate the dispute in question. (*Glenn H. Johnson*, 245 Ill. App. 3d at 22, 618 N.E.2d at 211.) The arbitration provision in the 1992 Agreement states, in pertinent part:

> "Any dispute between the Parties with respect to this Agreement shall be submitted to arbitration by a Board of Arbitration at the written request of either Party ***."

The 1992 Agreement defines "Party" as IMEA or Illinois Power "and their successors and permitted assignees." Therefore, the only parties

to the arbitration agreement were Illinois Power and IMEA. In fact, Illinois Power and IMEA agree that Peru is not a party to the 1992 Agreement. We note that Peru did not sign the 1992 Agreement, is not defined as a party to the Agreement and did not adopt the provisions of the Agreement by ordinance.

Illinois Power nevertheless argues that Peru can be compelled to arbitrate the dispute because it is a third-party beneficiary of the 1992 Agreement. It is uncontested that Peru is a third-party beneficiary of the 1992 Agreement. A party is a third-party beneficiary of a contract when the intent to benefit the third party affirmatively appears from the language of the agreement. (*Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 393, 577 N.E.2d 1344, 1352.) The 1992 Agreement specifically states that IMEA entered into the agreement on its own behalf and for the benefit of its members located within Illinois Power's control area. Accordingly, Peru, as a member of IMEA, is a third-party beneficiary of the contract.

Illinois Power cites *Johnson v. Noble* (1992), 240 Ill. App. 3d 731, 608 N.E.2d 537, as support for its position that Peru can be compelled to arbitrate as a third-party beneficiary to the agreement. In *Johnson*, the court held that the third-party beneficiary of a contract which included an arbitration provision could compel a party to the contract to arbitrate a dispute. (*Johnson*, 240 Ill. App. 3d at 735-36, 608 N.E.2d at 540-41.) Therefore, Illinois Power contends that the third-party beneficiary doctrine applies to arbitration agreements and Peru may be compelled to participate in arbitration.

*Johnson*, however, involved a motion to compel arbitration under the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (1988)). (*Johnson*, 240 Ill. App. 3d at 734, 608 N.E.2d at 540.) Consequently, the court in *Johnson* relied on cases construing the Federal Arbitration Act. Here, however, the trial court specifically found that the Federal Arbitration Act did *not* apply. Illinois Power has not challenged this ruling. Instead, the parties agree that the applicable law is the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 1992)). We additionally note that the 1992 Agreement does not involve interstate commerce. Consequently, we find that the Uniform Arbitration Act clearly applies. *Cf. Howells v. Hoffman* (1991), 209 Ill. App. 3d 1004, 1006, 568 N.E.2d 934, 935.

The Uniform Arbitration Act embodies a legislative policy favoring the enforcement of agreements to arbitrate disputes. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 443, 530 N.E.2d 439, 443.) However, the language of the arbitration agreement determines which issues are subject to arbitration. (*Rauh*

*v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 387, 574 N.E.2d 636, 641.) Therefore, arbitration agreements cannot be extended by construction or implication. *Rauh*, 143 Ill. 2d at 387, 574 N.E.2d at 641.

Under the Uniform Arbitration Act, the law is clear that persons who are *not* parties to an arbitration agreement *cannot* be compelled to participate in arbitration. *Jacob v. C&M Video, Inc.* (1993), 248 Ill. App. 3d 654, 659, 618 N.E.2d 1267, 1271; *Nagle v. Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C.* (1993), 244 Ill. App. 3d 920, 925, 613 N.E.2d 331, 334; *Vukusich v. Comprehensive Accounting Corp.* (1986), 150 Ill. App. 3d 634, 640, 501 N.E.2d 1332, 1336; *Wigod v. Chicago Mercantile Exchange* (1986), 141 Ill. App. 3d 129, 132, 490 N.E.2d 39, 41.

Based upon the language of the arbitration provision in the 1992 Agreement, it is apparent that Peru is not a party to the arbitration agreement. Illinois Power has not cited any authority which holds that a third-party beneficiary can be compelled to participate in arbitration under these circumstances. After reviewing established case law construing the Uniform Arbitration Act, we conclude that Peru cannot be compelled to arbitrate the dispute based upon the 1992 Agreement. Additionally, we conclude that Peru cannot be compelled to arbitrate the dispute based upon the 1986 Agreement. Peru does not dispute Illinois Power's assertion that Peru adopted the provisions of the 1986 Agreement by ordinance. There is also no dispute that the 1986 Agreement contained an arbitration provision. Illinois Power argues that the 1986 Agreement remains in full force and effect as between Peru and Illinois Power. Therefore, Illinois Power contends that Peru is bound by the arbitration provision in the 1986 Agreement. However, the 1992 Agreement provided:

> "As of the effective date of this Agreement, the Power Coordination Agreement between Illinois Power Company and the Illinois Municipal Electric Agency dated June 2, 1986, \*\*\* shall be superseded and cancelled \*\*\*."

We agree with IMEA that it is impossible to cancel the 1986 Agreement and still have it remain in full force and effect with respect to Peru. We cannot compel Peru to arbitrate the provisions of a cancelled agreement. As a result of our holding, we do not need to address the other arguments raised by the parties.

For all of the reasons indicated, we affirm the order of the circuit court of La Salle County and remand the cause for further proceedings.

Affirmed and remanded.

SLATER, P.J., and BRESLIN, J., concur.