IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2002 Session

**LARRY EUGENE BENTON**

**v.**

**THE VANDERBILT UNIVERSITY**

**An Appeal from the Circuit Court for Davidson County**
**No. 99C-1906     Carol L. Soloman, Judge**

**No. M2002-00085-COA-R3-CV - filed March 31, 2003**

This is a case of first impression regarding the enforceability of an arbitration agreement against a third party. The plaintiff was a passenger in an automobile accident and was treated at the defendant hospital. The hospital filed a statutory hospital lien against any proceeds the plaintiff might recover in any lawsuit arising out of the car accident. The plaintiff later successfully sued the tortfeasor for the injuries he sustained in the accident. Thereafter, the hospital sought to recover under its lien for the balance of the plaintiff's medical bills that were not paid to the hospital by the plaintiff's insurance carrier. The plaintiff filed this action against the hospital, claiming that the hospital's practice of balance billing violates the institution agreement between the hospital and the plaintiff's insurance carrier. The hospital filed a motion in the trial court to compel arbitration, pursuant to an arbitration provision contained in the institution agreement. The trial court denied that motion. The hospital now appeals the denial of its motion to compel arbitration. We reverse, concluding that the plaintiff, a third-party beneficiary to the institution agreement seeking to enforce his rights under that agreement, is bound by the arbitration provision contained within that agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Robert J. Walker, John S. Bryant, and Clisby Hall Barrow, Nashville, Tennessee, for the appellant, The Vanderbilt University.

Phillip L. Davidson, Nashville, Tennessee, and Earle J. Schwarz, Memphis, Tennessee, for the appellee, Larry Eugene Benton.

**OPINION**

On December 13, 1998, Plaintiff/Appellee Larry Eugene Benton ("Benton") was riding as a passenger in an automobile driven by William Hays. The car in which Benton was a passenger was struck by another automobile driven by Zella Lynn ("Lynn"). Benton was injured in the accident, and he required hospitalization at Defendant/Appellant The Vanderbilt University Medical Center ("Vanderbilt" or "the hospital"). He remained at the hospital from December 13 through December 18, incurring medical expenses of $31,504.84. On January 25, 1999, Vanderbilt filed a Notice of Hospital Lien pursuant to Tennessee Code Annotated § 29-22-101, *et seq.*, against any proceeds Benton might recover from Lynn for his medical expenses incurred at Vanderbilt. At the time of the accident, Benton was insured for his medical expenses through Blue Cross and Blue Shield of Tennessee ("Blue Cross"). Under that insurance policy, Blue Cross paid a portion of Benton's medical expenses.

Benton later sued Lynn for the personal injuries he received in the accident, including the costs of his medical treatment at Vanderbilt. Thereafter, Vanderbilt sought to recover $14,772.09 from the proceeds of the lawsuit under its hospital lien, which was the amount of Benton's hospital charges not paid by Blue Cross. Lynn, who admitted liability for the accident, deposited $14,772.09 with the trial court clerk's office pending the resolution of this case.

Prior to Benton's accident, Vanderbilt and Blue Cross had entered into an "Institution Agreement" ("Institution Agreement" or "Agreement") under which Vanderbilt agreed to provide health care services to members of the Blue Cross health care plan at previously set discounted rates.[1] Under the Institution Agreement, Vanderbilt agreed not to bill any Blue Cross member for the difference between the actual charges and the set charges agreed to by Blue Cross, a practice commonly known as "balance billing." *See River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, No. M2001-00288-COA-R3-CV, 2002 WL 31302926, at *9 (Tenn. Ct. App. Oct. 11, 2002) (noting that "balance billing" is the provider's practice of billing the patient for an amount charged by the provider but not paid by the insurance company). The Institution Agreement provided "that in no event . . . shall [Vanderbilt] bill, charge, collect a deposit from, seek compensation from, or have any recourse against [Blue Cross] members or persons . . . for Covered Services provided pursuant to this Agreement."[2] It also contained a provision requiring that all

---

[1] The Institution Agreement itself is under seal. The provisions of the Agreement that are quoted in this Opinion, however, were quoted by the parties in their briefs and are necessary to our analysis. Therefore, those provisions need not be protected by the seal.

[2] The Institution Agreement provided that Vanderbilt:

shall be reimbursed for the provision of Covered Services provided to [Blue Cross] Members in accordance with the terms set forth in this Institution Agreement and the applicable Network Attachment. [Vanderbilt] agrees to accept . . . [a] percent of covered charges as payment in full for services rendered to [Blue Cross] Members not covered through a Network product. Such reimbursement as is described in this section shall represent the maximum amount payable to

(continued...)

disputes under the Institution Agreement be submitted to arbitration. Under that provision, the parties agreed that all disputes "involving a contention by either party that the other has failed to perform its obligations and responsibilities under [the Institution] Agreement . . . shall be promptly submitted to inexpensive and binding arbitration."[3]

On July 13, 1999, Benton filed a class action lawsuit against Vanderbilt.[4] In the complaint, Benton asserted that he was a third-party beneficiary to the Institution Agreement. Under the Institution Agreement, Benton contended, Vanderbilt had agreed to accept the set charges from Blue Cross as payment in full, and Vanderbilt's practice of routinely filing and pursuing hospital liens against him and other class members to recover charges in excess of those set charges constituted an abuse of process, breach of contract, and a violation of the Tennessee Consumer Protection Act. On July 24, 2001, Vanderbilt filed a motion to compel arbitration, pursuant to the provision in the Institution Agreement, and to stay proceedings pending the arbitration. *See* Tenn. Code Ann. § 29-5-303. In its motion, Vanderbilt argued that Benton, as a third-party beneficiary of the Institution Agreement, was bound by the provision requiring arbitration. Benton objected, arguing that he was

---

[2](...continued)

[Vanderbilt] for Covered Services and [Vanderbilt] shall not bill any [Blue Cross] Member for any contractual difference between billed charges and such reimbursement. [Vanderbilt] agrees that in no event, including, but not limited to, non-payment by [Blue Cross] . . . , rebundling or down coding of charges by [Blue Cross] . . . , [Blue Cross's] insolvency, or breach of this Agreement, shall [Vanderbilt] bill, charge, collect a deposit from, seek compensation from, or have any recourse against [Blue Cross] members or persons, other than [Blue Cross], acting on the behalf of [Blue Cross] Members, for Covered Services provided pursuant to this Agreement.

Institution Agreement ¶ 6.1.

[3]The arbitration provision in the Institution Agreement states in full:

**8.2 Arbitration.** If a dispute, other than a dispute for which the resolution is provided for in the Utilization Review Program, arises between the parties of this Agreement involving a contention by either party that the other has failed to perform its obligations and responsibilities under this Agreement, then the party making such contention shall promptly give written notice to the other. Such notice shall set forth in detail the basis for the party's contention, and shall be sent by certified mail, with a return receipt requested. The other party shall within thirty (30) calendar days after receipt of the notice provide a written response seeking to satisfy the party that gave notice regarding the matter as to which notice was given. Following such response, or the failure of the second party to respond to the complaint of the first party within thirty (30) calendar days, if the party that gave notice of dissatisfaction remains dissatisfied, then that party shall so notify the other party and the matter shall be promptly submitted to inexpensive and binding arbitration in accordance with the Tennessee Uniform Arbitration Act at Tennessee Code Annotated Section 29-5-301et seq.

Institution Agreement ¶ 8.2.

[4]Vanderbilt filed a Notice of Removal on August 18, 1999. Benton filed a motion to remand in response, and the federal district court remanded the lawsuit to state court on October 24, 2000.

not bound by the arbitration provision in the Institution Agreement because he was not a party to it and, therefore, did not agree to arbitrate disputes arising from it.

After a hearing and additional briefing on the issue, the trial court denied Vanderbilt's motion to order arbitration. On December 12, 2001, the trial court entered an order stating simply that "[i]t is the opinion of the court that [Benton] is not bound to the Arbitration provision contained in the Contract between [Blue Cross] and Vanderbilt." Vanderbilt now appeals that order, arguing that Benton, as a third-party beneficiary to the Agreement, is bound by the arbitration provision in the Institution Agreement.[5]

On appeal, the parties do not dispute that the arbitration provision in the Institution Agreement is valid and enforceable as between Blue Cross and Vanderbilt. The only issue presented is whether Benton, a third-party beneficiary, is bound by the arbitration provision contained the Institution Agreement. This is a legal issue, which we review de novo, affording the trial court's decision no presumption of correctness. *Frounfelker v. Identity Group, Inc.*, No. M2001-02542-COA-R3-CV, 2002 WL 1189299, at *2 (Tenn. Ct. App. June 5, 2002).

Vanderbilt argues that the trial court's conclusion permits Benton to select unilaterally the terms of the Institution Agreement that benefit him, while ignoring the terms by which he does not wish to be bound. Benton's complaint, Vanderbilt notes, "would not exist but for the contract" between Blue Cross and Vanderbilt. *Ex parte Dyess*, 709 So. 2d 447, 451 (Ala. 1997). Therefore, Benton should not be permitted to reap the benefits of the Institution Agreement, while at the same time avoiding the burdens imposed by it. Vanderbilt acknowledges that there are no Tennessee cases directly addressing the issue. It contends, however, that the Tennessee Uniform Arbitration Act evidences a clear legislative policy favoring the enforcement of arbitration agreements, and that "[t]he general principles of Tennessee law applicable to third-party beneficiaries indicate that [Benton] is and should be bound by the arbitration term of the [ ] Agreement."

Benton, on the other hand, argues that Tennessee cases are clear in holding that one who has not expressly consented to the resolution of disputes in a non-judicial forum cannot be compelled to arbitrate. Although he is a third-party beneficiary to the Institution Agreement, Benton argues, he is nonetheless a non-signatory to it. Benton asserts that the language in the arbitration provision indicates that the provision cannot be imposed on anyone other than Blue Cross and Vanderbilt. Therefore, because Benton did not consent to arbitration and because the provision does not lend itself to application to a third party, he cannot be forced to arbitrate and forego his constitutional right to have his claims resolved in a judicial forum.

---

[5]The trial court's order denying the motion to compel arbitration is appealable pursuant to Tennessee Code Annotated § 29-5-319(a)(1).

The issue of whether a third-party beneficiary who sues on a contract is bound by the arbitration provision contained in that contract is an issue of first impression in Tennessee.[6] It is well-settled, of course, that arbitration agreements are favored under the Tennessee Uniform Arbitration Act ("the Act") and should be given as broad a construction as the language of the agreement will warrant. *See Buraczynski v. Eyring*, 919 S.W.2d 314, 317 (Tenn. 1996); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905, 908 (Tenn. Ct. App. 1991). The pertinent statute provides:

> [A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that for contracts relating to farm property, structures or goods, or to property and structures utilized as a residence of a party, the clause providing for arbitration shall be additionally signed or initialed by the parties.

Tenn. Code Ann. § 29-5-302(a) (2000). The Act also provides that a court "shall order" parties to arbitrate disputes if there is a valid agreement to arbitrate:

> On application of a party showing an agreement described in § 29-5-302, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

Tenn. Code Ann. § 29-5-303(a) (2000). Thus, enforcement of a valid arbitration agreement is clearly favored under the statutes. This principle, however, presumes the existence of a valid, enforceable agreement to arbitrate. Moreover, it applies to an agreement to arbitrate disputes "arising between the parties." Tennessee statutes do not address the issue presented in this case, namely, whether a

---

[6] We note that the Tennessee Supreme Court has stated that "arbitration clauses are not binding on third parties who are not parties to the contract." *Cocke County Bd. of Highway Comm'rs v. Newport Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). The Court has not addressed, however, whether an arbitration provision would be binding on a third-party beneficiary whose cause of action arises out of a claim derived from the contract containing the arbitration provision. Therefore, the holding in *Cocke County* is not dispositive of the issue in this appeal.

We also note this Court has stated that "[a]n arbitration clause does not bind one not a party to the contract." *C.O. Christian & Sons Co. v. Nashville P.S. Hotel, Ltd.*, 765 S.W.2d 754, 757 (Tenn. Ct. App. 1988). In *C.O. Christian & Sons*, a subcontractor filed a lawsuit to enforce a materialmen's lien against both the general contractor and the owner of the subject property. *Id.* at 755. The owner thereafter attempted to compel the subcontractor to arbitrate his claim, pursuant to an arbitration provision in the contract between the subcontractor and the general contractor. The appellate court held that, because the property owner was not a party to the contract between the general contractor and the subcontractor, the property owner was not entitled to enforce the provisions of that contract. In that case, however, unlike the instant case, the non-party defendant attempted to enforce the arbitration provision entered into by the plaintiff. More importantly, the case is distinguishable because the property owner seeking to enforce the arbitration clause did not claim to be a third-party beneficiary of that contract. *See id.* Therefore, *C.O. Christian & Sons* is also not dispositive of the issue on this appeal.

third-party beneficiary to a contract is required to submit to arbitration a dispute arising out of the contract, pursuant to an arbitration provision contained therein.

In discussing third-party beneficiaries generally, Tennessee courts have held that a third-party beneficiary who accepts the benefits of a contract must also accept any obligations under that contract. *See United States Fid. & Guar. Co. v. Elam*, 278 S.W.2d 693, 702 (Tenn. 1955) (reasoning that third-party beneficiaries must accept not only the benefits, but also the express obligations in the contract); *Petty v. Sloan*, 277 S.W.2d 355, 358 (Tenn. 1955) (stating that the rights of "third-party beneficiaries are affected with all the infirmities of the contract as would have been between parties to the contract"). This Court has noted that the rights of a third-party beneficiary are measured by the terms of the underlying contract:

> A third-party beneficiary's contractual rights derive from and must be measured by the underlying contract between the original promisor and promisee. . . . A third-party beneficiary's rights hinge upon the validity of the underlying contract and are subject to all the equitable defenses that the original promisor could assert against the original promisee.

*Linehan v. Allstate Ins. Co.*, No. 01A01-9308-CH-00387, 1994 WL 164113, at *3 (Tenn. Ct. App. May 4, 1994) (citation omitted). Moreover, the rights of a third-party beneficiary "do not exceed the rights of [a party to the contract]." *Rentenbach Constructors, Inc. v. Bowen*, No. E2000-1213-COA-R3-CV, 2000 WL 1690286, at *3 (Tenn. Ct. App. Nov. 13, 2000).

In discussing arbitration provisions, however, Tennessee courts have consistently held that a person cannot be forced to arbitrate disputes under an arbitration provision to which he has not assented. *See Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999). "Because 'arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (recognizing that the Federal Arbitration Act ("FAA") does not require parties to arbitrate when there is no agreement to do so, despite the general federal policy favoring arbitration).[7]

---

[7] In *Waffle House*, the Supreme Court of the United States held that the Equal Employment Opportunity Commission ("EEOC"), suing on behalf of an aggrieved employee, is not bound by the arbitration provision in the employee's employment contract. The Court's conclusion was based, in part, on the principle that the FAA "ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a nonparty's choice of a judicial forum." *Waffle House*, 534 U.S. at 289. The Court ultimately held that the EEOC was not bound by the arbitration provision in the employee's employment contract based on the EEOC's independent statutory authority to vindicate the public interest, which was not even contemplated by the parties when they reached their agreement. *Id.* at 296. The Court found that a contrary conclusion would give greater effect to the parties' agreement than to the detailed enforcement scheme created by Congress. *Id.* Obviously, those considerations are not present in the instant case, and the holding in *Waffle House* is not conclusive.

Thus, in order to determine whether a third-party beneficiary to a contract should be forced to arbitrate a contractual dispute pursuant to the arbitration clause in that contract, we must balance on one hand, the principle that a third party beneficiary to a contract accepts the burdens of the contract along with its benefits, and on the other hand, the principle that an arbitration clause is not binding on one who is not a party to the agreement to arbitrate. For guidance, we examine caselaw from other jurisdictions.

One line of cases holds that a third-party beneficiary suing on a contract is bound by the arbitration provision in that contract. For example, in *Ex parte Dyess*, 709 So. 2d 447 (Ala. 1997), the petitioner was involved in an accident while he was test driving an automobile owned by an automobile dealership. The petitioner sued the dealership's insurance company, claiming benefits under the uninsured motorist provision of the dealership's insurance policy. *Dyess*, 709 So. 2d at 448. The insurance policy between the dealership and the insurance company included an agreement to arbitrate claims under the uninsured motorist provision. Though the petitioner was not a party to that agreement, the trial court required the petitioner to arbitrate his claims. *Id.* at 449.

The petitioner filed a petition for a writ of mandamus in the Supreme Court of Alabama, seeking to have the order compelling arbitration vacated. The Supreme Court of Alabama declined to do so, finding that the petitioner was a third-party beneficiary to the insurance contract, and that he could not be permitted to "pick and choose the portions of the contract that he wants to apply." *Id.* at 451. The court relied on language in a decision by the United States Supreme Court, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995), wherein the Court stated that a state may not "decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Dyess*, 709 So. 2d at 451 (quoting *Allied-Bruce Terminix*, 513 U.S. at 281). Therefore, the Alabama court in *Dyess* held that a third-party beneficiary seeking to recover under the terms of an insurance contract is bound by the arbitration agreement contained therein. *Id.*; *accord Georgia Power Co. v. Partin*, 727 So. 2d 2, 5 (Ala. 1998) (holding that third-party beneficiary suing on an operations agreement must accept all of the terms of the contract, including the arbitration provision); *Johnson v. Pennsylvania Nat'l Ins. Cos.*, 594 A.2d 296, 298 (Penn. 1991) (stating that passenger in an automobile accident must arbitrate claims brought pursuant to insured's insurance policy because she must be "bound by the limitations contained in the contract she seeks to enforce").

Similarly, a Maryland appellate court held that third-party beneficiary is required to arbitrate disputes pursuant to an arbitration clause in the contract he seeks to enforce. *District Moving & Storage, Co. v. Fedco Systems, Inc.*, 492 A.2d 319 (Md. Ct. Spec. App. 1985), *aff'd*, 508 A.2d 487 (Md. 1986). In *District Moving & Storage*, a lessee of a warehouse sued the architect and the contractor of the warehouse for faulty workmanship and failure to comport with contract specifications. Although the lessee was a third-party beneficiary of the construction contract between the owner of the warehouse and the defendants, the lessee argued that he should not have been bound by the arbitration clauses in those agreements because he was not a signatory to them. *Id.* at 322. The Maryland court rejected this argument, holding that the lessee should be compelled to arbitrate his disputes. The Maryland court emphasized that the lessee should not benefit from the

agreements he sought to enforce "without equally being made to abide by the terms of the contracts compelling arbitration of disputes arising therefrom." *Id.* at 323 (relying on ***Jeanes v. Arrow Ins. Co.***, 494 P.2d 1334, 1337 (1972)). That decision was upheld on appeal in a *per curiam* opinion, supported by further authority. *See **District Moving & Storage***, 508 A.2d at 487 (citing ***International Bhd. of E.W., L.U. v. Dave's Elec. Serv., Inc.***, 382 F. Supp. 427, 429-30 (M.D. Fla. 1974); ***State v. Osborne***, 607 P.2d 369, 371 (Alaska 1980); ***Zac Smith & Co. v. Moonspinner Condominium Ass'n***, 472 So. 2d 1324, 1324-25 (Fla. Dist. Ct. App. 1985); ***Syndor & Hundley, Inc. v. Wilson Trucking Corp.***, 194 S.E.2d 733, 736 (Va. 1973)).

Another line of cases holds that a non-signatory third-party beneficiary cannot be bound by an arbitration clause contained in the contract from which he seeks to benefit. *See **Cook's Pest Control, Inc. v. Boykin***, 807 So. 2d 524 (Ala. 2001); ***City of Peru v. Illinois Power Co.***, 630 N.E.2d 454 (Ill. Ct. App. 1994); ***Rae F. Gill, P.C. v. DiGiovanni***, 612 N.E.2d 1205 (Mass. Ct. App. 1992); ***Warner v. Securities & Futures Corp.***, 685 N.Y.S.2d 25 (N.Y. App. Div. 1999). For example, in ***City of Peru***, the City filed a complaint for injunctive relief against the defendant Illinois Power Company ("the power company"). The City noted in the complaint that it was a distributor of electric power and was a member of the municipal electric agency ("the agency"). The City claimed that the power company, which was also a retail supplier of electricity and a member of the agency, was providing power to one of the City's customers in violation of a coordination agreement between the power company and the agency. *City of Peru*, 630 N.E.2d at 455. The agency characterized the lawsuit as a dispute between two retail suppliers of electricity over which supplier would provide electricity to a particular customer. *Id.* at 456. The City later amended its complaint to assert that the power company's attempt to provide power to the City's customer violated section 14 of the Illinois Electric Supplier Act, 220 I.L.C.S. § 30/14 (West 1992). This allegation did not mention or rely on the coordination agreement between the power company and the agency. *Id.*

Subsequently, the power company filed a motion to compel arbitration of the City's claim, based on an arbitration provision contained in the power coordination agreement between the power company and the agency. The power company argued that the actual dispute involved the interpretation of the coordination agreement. *Id.* The trial court held that the City was a third-party beneficiary to the coordination agreement, but held that, because the City was not a party to the coordination agreement and because the dispute did not fall within the scope of that agreement, the City was not bound by the arbitration provision contained therein. *Id.* The Illinois appellate court affirmed the trial court's decision, emphasizing the fact that the City "did not sign the [coordination agreement], is not defined as a party to the Agreement and did not adopt the provisions of the Agreement by ordinance." *Id.* at 457. The Illinois court noted that the Uniform Arbitration Act had been adopted in Illinois and distinguished cases interpreting the Federal Arbitration Act. It concluded that, under the Uniform Arbitration Act, "arbitration agreements cannot be extended by construction or implication. . . . [T]he law is clear that persons who are *not* parties to an arbitration agreement *cannot* be compelled to participate in arbitration." *Id.* Thus, because the City was not a "party" as that term was defined in the coordination agreement at issue, the Illinois court held that the City could not be compelled to arbitrate its claim under the arbitration provision in the coordination agreement. *Id.*; *see also Warner*, 685 N.Y.S.2d at 26 (refusing to grant the defendant's

motion to compel arbitration when the defendant was listed as a third-party beneficiary in the underlying contract, but was not listed "either by name or by function" in the arbitration provision); *DiGiovanni*, 612 N.E.2d at 1208-09 (refusing to compel arbitration when a third-party beneficiary sought to compel arbitration against a signatory to the underlying contract, because the third-party beneficiary was not the intended beneficiary of the arbitration provision).

Benton urges this Court to follow the reasoning in *Rath v. Managed Health Network, Inc.*, 844 P.2d 12 (Idaho 1992), in which the Idaho court refused to compel arbitration because the language in the contract at issue stated that it applied only to the parties who signed the contract. In *Rath*, the plaintiffs, mother and son, sued the defendant health network for damages resulting from the insurance company's failure to provide coverage for mental health services. The parties to the group services agreement at issue were the health network, the plaintiff mother's employer, and the insurance company. The agreement was intended to provide mental health coverage to the employees of the mother's employer. The plaintiff mother was such an employee, seeking mental health benefits on behalf of her son. When the insurance company denied her mental health benefits, she sued the defendant health network. The agreement at issue provided that "[a]ny controversy between *the parties* to this Agreement shall be resolved" in an informal manner, if possible. The agreement next provided that, "in the event *the parties* are unable to resolve the controversy informally," then they would submit their disputes to arbitration. *Id.* (emphasis added). The health network argued that the plaintiffs were required to arbitrate their claims under those provisions. The Idaho court disagreed, holding that the language of the arbitration provision in the agreement did not apply to the plaintiffs because they were not "parties" to the agreement. The health network argued that the plaintiffs should nevertheless be bound by the agreement as third-party beneficiaries. The Idaho court rejected that argument, concluding that the cases relied on by the health network "are inapposite in the face of the language in the Agreement expressly limiting the arbitration clause to the 'parties' to the Agreement." *Id.*

In this case, as in *Rath*, the language in the Institution Agreement refers to disputes arising "between the parties." The arbitration provision in the Institution Agreement provides:

> If a dispute . . . arises between the parties of this Agreement involving a contention by either party that the other has failed to perform its obligations and responsibilities under this Agreement, then the party making such contention shall promptly give written notice to the other. Such notice shall set forth in detail the basis for the party's contention, and shall be sent by certified mail, with a return receipt requested. The other party shall within thirty (30) calendar days after receipt of the notice provide a written response seeking to satisfy the party that gave notice regarding the matter as to which notice was given. Following such response, or the failure of the second party to respond to the complaint of the first party within thirty (30) calendar days, if the party that gave notice of dissatisfaction remains dissatisfied, then that party shall so notify the other party and the matter shall be promptly submitted to

inexpensive and binding arbitration in accordance with the Tennessee Uniform Arbitration Act at Tennessee Code Annotated Section 29-5-301 et seq.

*See* Institution Agreement ¶ 8.2.

Other courts, however, have declined to hold reflexively that a non-signatory third party to a contract can never be bound by an arbitration provision in the contract, choosing instead to examine more closely the relationship between the non-signatory third-party's claims and the contract containing the arbitration provision. This approach was taken in ***Cook's Pest Control, Inc. v. Boykin***, 807 So. 2d 524 (Ala. 2001), a case on which Benton relies. In ***Cook's***, the plaintiff was a patient in a local Alabama hospital. While she was there, she was bitten more than 300 times by fire ants. ***Cook's***, 807 So. 2d at 525. The plaintiff sued, among other parties, the defendant pest-control company, alleging negligence, wantonness, and breach of contract. The contract allegedly breached was the company's service contract with the hospital for regular pest-control services. The pest-control company filed a motion to dismiss and to compel arbitration, based on an arbitration provision in the service contract. *Id.* In response, the plaintiff moved to amend her complaint to voluntarily dismiss the breach of contract claim. She then objected to the motion to compel arbitration, noting that her claims were no longer based on the contract between the pest-control company and the hospital. *Id.*

The Supreme Court of Alabama held that the plaintiff's remaining claims of negligence and wantonness were not subject to the arbitration provision in the service contract. *Id.* at 527. The Alabama court noted the general rule that a non-signatory to a contract cannot be bound to arbitrate his claims against the parties to that contract. In its analysis, however, the court recognized that the plaintiff's claims did not fall under either of two exceptions to that general rule. The Alabama court indicated that a non-signatory third party can be bound to the arbitration provision in a contract (1) if the plaintiff is a third-party beneficiary and, consequently, her claim is based on the existence of the contract, and (2) if the plaintiff's claims are "intertwined with" and "related to" the contract. *Id.* at 526-27. The court reasoned:

> It is black-letter law that arbitration agreements must be enforced according to general standards of contract law. . . . Accordingly, a party cannot be required to submit to arbitration any dispute he has not agreed to submit. It is the general rule that a nonsignatory to an arbitration agreement cannot be forced to arbitrate her claims. It is undisputed that [the plaintiff] is not a signatory to the contract between [the hospital and that pest-control company]. Consequently, there are only two means by which she could be bound to arbitrate her claims, neither of which applies to the facts of this case.

*Id.* at 526 (citations and quotations omitted); *see **Georgia Power***, 727 So. 2d at 8 (Shores, J., dissenting) (opining that third-party beneficiaries "could have avoided arbitration by not amending their complaint to state a contract claim"); ***Dyess***, 709 So. 2d at 450 (emphasizing that parties claiming third-party status must show that contracting parties intended to bestow a direct benefit

upon them); *see also Ex parte Napier*, 723 So. 2d 49, 53-54 (Ala. 1998) (compelling arbitration because the plaintiff's claims were intertwined with the contract containing arbitration provision). Thus, once the Alabama court had determined that the plaintiff's claims were "independent of any contractual obligations" on the part of the pest-control company, it refused to compel arbitration, based on the general rule that a non-signatory cannot be bound by arbitration provision in an agreement to which he did not assent.

As noted above, we are called upon in this case to balance two general principles, first, that a third-party beneficiary to a contract must accept the burdens as well as the benefits of the contract, and second, that an arbitration provision is not binding on one who is not a party to the agreement to arbitrate. The approach utilized by the Alabama court in *Cook's Pest Control* appears to appropriately balance these two principles, and we employ that reasoning in the instant case. In choosing to assert claims under the Institution Agreement, Benton relies on his status as a third-party beneficiary to the Agreement. As such, his claim is dependent on Vanderbilt's contractual obligations under the Agreement. We hold that, as an exception to the general rule not binding a non-signatory third party to an arbitration agreement, a third-party beneficiary to a contract who chooses to assert claims under the contract must accept both the benefits and burdens of that contract. *See Elam*, 278 S.W.2d at 702; *Linehan*, 1994 WL 164113, at *3. Such a plaintiff cannot "pick and choose" the provisions of the contract to which he wishes to be bound. *See Dyess*, 709 So. 2d at 451. Consequently, a third party beneficiary such as Benton, whose claim is based on the contract and is "intertwined with" and "related to" the contract, can be bound by an arbitration provision in the contract on which he relies. Thus, we reverse the trial court's denial of Vanderbilt's motion to compel arbitration, and remand to the trial court for further proceedings.

The decision of the trial court is reversed, and the cause remanded for further proceedings consistent with this Opinion. Costs are to be assessed to the appellee, Larry Eugene Benton, for which execution may issue, if necessary.

 

_____
HOLLY KIRBY LILLARD, JUDGE